### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| STELIAN G. PAND, | ) | Case No. 13-22846-reb |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| SUNTRUST BANK, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. _____ |
| | ) | |
| vs. | ) | |
| | ) | |
| STELIAN G. PAND, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

### COMPLAINT OF SUNTRUST BANK TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C §§523(a)(2)(A) AND 523(A)(2)(B)

NOW COMES Plaintiff SunTrust Bank ("SunTrust" and/or "Plaintiff"), a creditor and party in interest in the above-styled bankruptcy case, through its counsel, and pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure files this *Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(2)(B)* (the "Complaint"), and in support thereof respectfully shows the Court as follows:

### JURISDICTION AND VENUE

1. On October 4, 2013 (the "Petition Date"), Stelian G. Pand ("Debtor" and/or "Defendant") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in this Court. [Doc. No. 1].

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1334 and 157.

1

3.    Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1409(a) as Defendant's Chapter 7 bankruptcy case is pending in this Court.

4.    This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (I).

## PARTIES

5.    Plaintiff is a Georgia banking corporation with its principal office located in Atlanta, Georgia.

6.    Defendant is an individual citizen and resident of the State of Georgia.  Upon information and belief, Defendant currently resides at 3125 New University Trail, Cumming, Georgia 30041 and, pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure, may be served at said address for all matters concerning this Adversary Proceeding including service of process.

## PROCEDURAL BACKGROUND

7.    The time to file a complaint objecting to the dischargeability of certain debts was originally set for January 17, 2014.

8.    On November 27, 2013, the time to object to the Debtor's discharge was extended through and including February 17, 2014.  *See Consent Order Granting SunTrust Bank's Motion For Extension Of Time To File A Complaint Objecting To Discharge And Dischargeability* [Doc. No. 17].

9.    On December 20, 2013, SunTrust, by and through its counsel, conducted an examination of the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Rule 2004 Examination").

2

### FACTS

10.     SunTrust made certain loans and financial accommodations to Global Capital Group, LLC ("Global Capital") including (i) that certain Promissory Note No. 2119840426 from Global Capital to SunTrust dated October 16, 2008, in the original principal amount of $350,000.00 (the "Note No. 26"); and (ii) that certain Commercial Note No. 2119840442 from Global Capital to SunTrust dated June 29, 2009, in the original principal amount of $700,000.00, as renewed by that certain Commercial Note from Global Capital to SunTrust dated February 10, 2011, in the original principal amount of $1,000,000.00, as renewed by that certain Commercial Note from Global Capital to SunTrust dated December 14, 2011, in the original principal amount of $2,000,000.00 (collectively, the "Note No. 42," and together with the Note No. 26, the "Notes").  True and correct copies of Note 26 and Note 42 are attached hereto as <u>Exhibits A and B</u>, respectively.

11.     The Debtor holds a 100% ownership interest in Global Capital.

12.     The payment and performance by Global Capital with respect to the Notes was guaranteed by the Debtor pursuant to that certain Unconditional Guaranty from the Debtor to SunTrust dated August 8, 2008 (the "Guaranty").  A true and correct copy of the Guaranty is attached hereto as <u>Exhibit C</u>.

13.     Prior to the Petition Date, Global Capital defaulted under the Notes by failing to make payments as and when due.

14.     Prior to the Petition date, the Debtor defaulted under the Guaranty by failing to make payments on the Notes as and when due.

15.     As of the Petition Date, the amount owing under the Notes was not less than $2,006,743.91 on Note 42 and $133,342.47 on Note 26.

3

16.     In connection with the Notes and renewals of the Notes, the Debtor provided to SunTrust certain false representations and/or provided false financial statements regarding the Debtor's financial condition in order to obtain money, property and/or a renewal of credit from SunTrust.

**A.     The Debtor's Representations In Personal Financial Statements, Tax Returns And Global Capital Financial Statements**

17.     The Debtor made certain representations and statements to SunTrust concerning the Debtor's total assets available in the form of immediate cash and stock contained within various bank accounts and investment accounts that the Debtor purportedly owned.

18.     These representations included, without limitation, those made in the Debtor's 2008, 2009, 2010 and 2011 personal financial statements (collectively the "Personal Financial Statements") provided to SunTrust.

19.     The representations regarding the Debtor's total liquid funds available in the form of stock and immediate cash as contained within various bank accounts, included:

| Year | Investment Assets/Stocks | Cash on Hand and in Bank Accounts | Total |
|------|--------------------------|-----------------------------------|-------|
| 2008 | $189,768 | $169,770 | **$359,538** |
| 2009 | $190,762 | $275,712 | **$466,474** |
| 2010 | $131,500 | $316,678 | **$448,178** |
| 2011 | $159,984 | $513,955 | **$673,939** |

*See* Personal Financial Statement dated July 23, 2008, attached hereto as Exhibit D; Personal Financial Statement dated May 15, 2009, attached hereto as Exhibit E; Personal Financial

Statement dated September 28, 2010, attached hereto as <u>Exhibit F</u>; and Personal Financial Statement dated July 11, 2011, attached hereto as <u>Exhibit G</u>.

20.    The Debtor further made certain representations and statements to SunTrust concerning the Debtor's purported ownership of certain real property located at 3125 New University Trail, Cumming, Georgia (the "Personal Residence") and of the Debtor's purported ownership of automobiles.

21.    These representations included, without limitation, those made in the Debtor's 2009, 2010 and 2011 Personal Financial Statements, as follows:

| Year | Value of Personal Residence | Value of Automobiles |
|------|------------------------------|----------------------|
| 2008 | $450,000 | $40,000 |
| 2009 | $450,000 | $40,000 |
| 2010 | $320,000 | $75,000 |
| 2011 | $320,000 | $75,000 |

22.    Based on the foregoing, and as set forth in the Debtor's Personal Financial Statements, the Debtor reported total net worth for years 2008, 2009, 2010 and 2011 as follows:

|  | Assets | Liabilities | **Total Net Worth** |
|------|--------|-------------|---------------------|
| 2008 | $ 850,038 | $176,790 | **$ 673,248** |
| 2009 | $ 857,374 | $500 | **$ 856,874** |
| 2010 | $ 871,662 | $0 | **$ 871,662** |
| 2011 | $1,040,455 | $0 | **$1,040,455** |

23.    The Debtor also made certain representations and statements to SunTrust concerning the Debtor's purported income for the years 2009 and 2010.

5

24.    These representations included, without limitation, those made in the Debtor's 2010 and 2011 Personal Financial Statements, as follows:

| Year | Salary | Bonuses and Commissions | Total Income |
|------|--------|-------------------------|--------------|
| 2009 | $ 132,506.00 | $ 890,052.00 | **$1,022,558.00** |
| 2010 | $ 132,506.00 | $1,390,917.00 | **$1,523,839.00** |

*See* Exhibits C and D, Personal Financial Statements dated September 28, 2010 and July 7, 2011.

20.    The Debtor personally executed each of the Personal Financial Statements and certified therein that each was true and correct as of the date provided. *See* Exhibits D – G.

21.    The Debtor further made representations to SunTrust of his purported income for the year 2010 in a purported 2010 individual tax return provided to SunTrust.

22.    The representation of the Debtor's income as set forth in the purported 2010 individual tax return included a salary of $132,506 and other income from Global Capital in the amount of $1,390,917, for a total income of $1,523,839. *See* July 7, 2011 Personal Financial Statement, Exhibit D.

23.    The Debtor also made certain representations and statements to SunTrust regarding the purported financial condition and income of Global Capital.

24.    The representations included, without limitation, those made in balance sheets and income statements of Global Capital provided to SunTrust by the Debtor for the year 2010 and 2011.

25.    The representations of Global Capital's financial condition, included, as follows:

| Period | Net Income | Accounts Receivable |
|--------|-----------|---------------------|
| September 30, 2010 | $ 890,160.81 | $2,452,722.26 |
| September 30, 2011 | $1,004,685.23 | $3,356,089.00 |

6

*See* Global Capital Income Statement and Accounts Receivable Aging Report as of September 30, 2011, attached hereto as Exhibit H; and Global Capital Balance Sheet, Income Statement and Accounts Receivable Aging Report as of September 30, 2010, attached hereto as Exhibit I (collectively, the "Global Capital Financial Statements").

26.     The representations and statements of Global Capital's purported income and assets also included, without limitation, those made in purported 2008, 2009 and 2010 business tax returns of Global Capital provided to SunTrust by the Debtor.

27.     The representations of Global Capital's income for the years 2008, 2009 and 2010 were as follows:

| Year | Ordinary Business Income |
|------|--------------------------|
| 2008 | $   899,620.00 |
| 2009 | $   890,052.00 |
| 2010 | $1,390,917.00 |

28.     In December, 2011, SunTrust renewed Note 42 and increased the amount loaned to Global Capital to $2,000,000.00.  *See* Exhibit B.

**B.     Facts Pertaining To The Falsity of The Debtor's Representations And/Or Financial Statements Provided To SunTrust**

29.     Based on the foregoing, the Debtor represented and provided false statements to SunTrust establishing that as of July 23, 2008, the Debtor had a total net worth of $673,248.00.

25.     Based on the foregoing, the Debtor represented and provided false statements to SunTrust establishing that as of March 15, 2009, the Debtor had a total net worth of $856,874.00.

26.     Based on the foregoing, the Debtor represented and provided false statements to SunTrust establishing that as of September 28, 2010, the Debtor had a total net worth of $871,662.00.

313149:1:ATLANTA

27.    Based on the foregoing, the Debtor represented and provided false statements to SunTrust establishing that for the year 2009, the Debtor had income totaling $1,022,558.00.

28.    Based on the foregoing, the Debtor represented and provided false statements to SunTrust establishing that for the year 2010, the Debtor had income totaling $1,523,839.00.

29.    Based upon the foregoing, the Debtor represented and provided false statements to SunTrust establishing that as of July 11, 2011, the Debtor had a total net worth of $1,040,455.

30.    At the Rule 2004 Examination, the Debtor testified to the inaccuracy of (i) the 2008, 2009, 2010 and 2011 Personal Financial Statements; (ii) the 2010 individual tax return contained in SunTrust's files; and (iii) the Global Capital business tax returns, as follows:

> Q:    So the financial statements are not accurate and the tax returns are not accurate?
>
> A:    Right.

See Exhibit J, excerpts from Rule 2004 Examination at p. 73, lines 18-20.

31.    Specifically, at the Rule 2004 Examination the Debtor testified that, as to the information contained in the Personal Financial Statements, "I never had those assets or anything that's listed on there." See Exhibit J, p. 63, line 10-11.

32.    The Debtor further testified at the Rule 2004 Examination that he never held any investments accounts, stock, or margin accounts as set forth on the Personal Financial Statements he executed. See Exhibit J, p. 53, lines 2-4; p. 55, lines 18-20; p. 58, lines 4-7.

33.    The Debtor testified at the Rule 2004 examination that he never held any money market accounts as set forth on the Personal Financial Statements he executed. See Exhibit J, p. 57, lines 4-5.

313149:1:ATLANTA

34.    The Debtor also testified at the Rule 2004 Examination that, at the time he executed the Personal Financial Statements, the Debtor never owned any automobiles. *See* Exhibit J, p. 56, line 25 - p. 58, line 1; p. 62, lines 22-23.

35.    The Debtor further testified at the Rule 2004 Examination that at the time he executed the 2009, 2010 and 2011 Personal Financial Statements, he no longer owned the Personal Residence, and in fact had not owned the Personal Residence since February, 2009. *See* Exhibit J, p. 66, lines 22-24; p. 68, lines 2-16.

36.    The Debtor testified at the Rule 2004 Examination that, at the time he executed the Personal Financial Statements, he never had cash on hand or in accounts as set forth in the Personal Financial Statements and testified that "I haven't really had cash on hand." *See* Exhibit J, p. 62, lines 1-11.

37.    The Debtor further testified at the Rule 2004 Examination that at the time he executed the 2010 and 2011 Personal Financial Statements, he did not make the income reflected in the 2010 and 2011 Personal Financial Statements. *See* Exhibit J, p. 63, lines 1-6; 68, lines 2-16.

38.    The Debtor also testified at the Rule 2004 Examination that the 2010 individual tax return contain in SunTrust's files reflecting an individual income of $1,523,839 was not accurate and that this tax return was not the 2010 individual tax return filed with the IRS. *See* Exhibit J p. 68, lines 22-25 and p, 69, lines 1-17.

39.    The Debtor testified at the Rule 2004 Examination that he only ever made a salary of about $40,000 to $50,000, not the $1,523,839 set forth on the Personal Financial Statements. *See* Exhibit J, p. 53, lines 14-16; p. 63, lines 1-6.

313149:1:ATLANTA

40.     The Debtor also testified at the Rule 2004 Examination that the 2009 Business Tax Return of Global Capital provided to SunTrust was not accurate.  *See* Exhibit J, p. 73, lines 12-20.

41.     The Debtor further testified that the 2010 Business Tax Return of Global Capital provided to SunTrust was not accurate, and that Global Capital never had income of $1,390,000.00. *See* Exhibit J p. 63, lines 1-6; p. 68, lines 22-25 and p, 69, lines 1-17.

42.     Upon information and belief, Global Capital never filed any tax returns.

43.     The Debtor also testified at the Rule 2004 Examination that the Global Capital Income Statement for the Nine Months Ending September 30, 2011 and Accounts Receivable Aging Report as of September 30, 2011 were not accurate, and in fact Global Capital never had the accounts, income or assets listed therein. *See* Exhibit J, p. 74, lines 7-11.

44.     The Debtor also testified at the Rule 2004 examination that the Global Capital Balance Sheet dated September 30, 2010, along with the Income Statement for the Nine Months Ending September 30, 2010 and Accounts Receivable Aging Report as of September 30, 2010 were not accurate, and in fact that Global Capital never had the accounts, income or assets listed therein. *See* Exhibit J, p. 74, lines 7-11.

45.     The information contained in each of the Personal Financial Statements had been provided to SunTrust by the Debtor in order to obtain money, property and/or a renewal of credit from SunTrust.

46.     The information contained in the Debtor's purported 2010 tax individual return had been provided to SunTrust by the Debtor in order to obtain money, property and/or a renewal of credit from SunTrust.

10

47.    The information contained in the Global Capital Financial Statements had been provided to SunTrust by the Debtor in order to obtain money, property and/or a renewal of credit from SunTrust.

48.    The information contained in the Global Capital Business Tax Returns had been provided to SunTrust by the Debtor in order to obtain money, property and/or a renewal of credit from SunTrust.

## COUNT I

### (False Pretenses, False Representation, or Actual Fraud - 11 U.S.C. § 523(a)(2)(A))

49.    Plaintiff restates and realleges the facts stated and alleged in Paragraphs 1 through 48, above, by reference as if specifically set forth verbatim herein.

50.    At the time that SunTrust extended various loans and other financial accommodations to Global Capital it did so in reliance on the Debtor's representations to SunTrust regarding the amount of the Debtor's assets and income.

51.    Based upon the foregoing, either the Debtor made false representations and provided false financial statements to SunTrust.

52.    At the time that Defendant made these representations, the Debtor knew they were false or made them with such reckless disregard for their accuracy, and failed to disclose facts with knowledge of their materiality, or with the intent and the purpose of deceiving and defrauding SunTrust.

53.    Without knowledge of the falsehood of the Debtor, SunTrust reasonably relied on these representations by extending loans and other financial accommodations to Global Capital and the Debtor.

11

54.    SunTrust has sustained and will continue to sustain damage as a result of Defendant's actions.

55.    Based on the foregoing, the debt owed to SunTrust by Defendant should be held non-dischargeable in bankruptcy and should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT II
### (False Pretenses, False Representation, or Actual Fraud in Connection with Financial Statements - 11 U.S.C. § 523(a)(2)(B))

56.    Plaintiff restates and realleges the facts stated and alleged in Paragraphs 1 through 48, above, by reference as if specifically set forth verbatim herein.

57.    In connection with the indebtedness owed by the Debtor under the Notes and Guaranty, Defendant provided numerous financial statements to SunTrust.

58.    At the time that SunTrust extended various loans and other financial accommodations to Global Capital and pursuant to the Guaranty, Defendant provided written statements regarding his financial condition and the financial condition of Global Capital to SunTrust in order to increase the appearance of the amount of the Debtor's assets and income.

59.    At the time that Defendant provided these written statements to SunTrust, Defendant knew they were false or made them with such reckless disregard for their accuracy, and failed to disclose facts with knowledge of their materiality, or with the intent and the purpose of deceiving and defrauding SunTrust.

60.    Without knowledge of the falsehood of Defendant, SunTrust reasonably relied on these written statements by extending loans and/or other financial accommodations to Defendant.

61.    SunTrust has sustained and will continue to sustain damage as a result of Defendant's actions.

313149:1:ATLANTA

62.    Based on the foregoing, the debt owed to SunTrust should be held non-dischargeable in bankruptcy and should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(B).

WHEREFORE, having stated its complaint against Defendant Stelian G. Pand, Plaintiff SunTrust Bank respectfully prays as follows:

(i) That the Court determine the debt owed to SunTrust by Defendant to be nondischargeable, pursuant to 11 U.S.C. §523(a)(2)(A), due to the Defendant's false representations;

(ii) That the Court determine the debt owed to SunTrust by Defendant to be nondischargeable, pursuant to 11 U.S.C. §523(a)(2)(B), due to the Defendant's false personal financial statements that Defendant provided to SunTrust;

(iii) That the Court enter a final judgment against Defendant in an amount equal to the outstanding balance of Note 26 and Note 42 as of the date of entry of judgment in an amount not less than $2,140,086.38, plus attorneys' fees and costs owing to SunTrust under the terms of the Notes and Guaranty; and

(iv) That SunTrust have such other and further relief that this Court may deem just and proper.

313149:1:ATLANTA

Dated: February 17, 2014

**STITES & HARBISON PLLC**

By:     *//s// Paul G. Durdaller*
        Paul G. Durdaller, Esq.
        Georgia Bar No. 234890
        Valerie K. Richmond, Esq.
        Georgia Bar No. 142188
303 Peachtree Street, N.E.
2800 SunTrust Plaza
Atlanta, Georgia 30308
Telephone:  (404) 739-8800
Facsimile:  (404) 739-8870
pdurdaller@stites.com
vrichmond@stites.com

*Attorneys for SunTrust Bank*

# EXHIBIT "A"

# SUNTRUST

**Commercial Note**

| | | |
|---|---|---|
| Borrower: | Global Capital Group, L.L.C. | Date: October 16, 2008 |
| Borrower Address: | 4700 Allison Drive | |
| | Sugarhill, GA 30518-0000 | |
| Loan Amount: | Three Hundred Fifty Thousand Dollars and no cents ($350,000.00) | |
| Account No.: | 21198404   Note No.: 26 | Officer: Hasan M. Mannan, 36162 |

For value received, the borrower(s) named above whether one or more, (the "Borrower"), jointly and severally promise to pay to the order of SunTrust Bank, a Georgia banking corporation ("SunTrust") without offset in U.S. Dollars and in immediately available funds, the Loan Amount shown above, or the total of all amounts advanced under this commercial note and any modifications, renewals, extensions or replacements thereof (this "Note") if less than the full Loan Amount is advanced, plus interest and any other amounts due, upon the terms specified below.

**Loan Type:**      Term Loan

**Repayment Terms:**   Fixed payment schedule consisting of 83 consecutive monthly installments of principal and interest of $5,343.09 each, payable on the 16th day of each month, beginning November 16, 2008, and a final payment equal to the unpaid principal balance plus accrued and unpaid interest and any other amounts owed due and payable on October 16, 2015.

## Interest

Interest will accrue on an actual/360 basis (on the actual number of days elapsed over a year of 360 days). Interest shall accrue from the date of disbursement on the unpaid balance and shall continue to accrue until this Note is paid in full.

Subject to the above, interest per annum payable on this Note (the "Rate") shall be 7.25% fixed for the term of the loan.

## Collateral

Unless otherwise agreed in writing, any collateral pledged to SunTrust to secure any of the existing or future liabilities of the Borrower to SunTrust shall also secure this Note. To the extent permitted by law, the Borrower grants to SunTrust a security interest in and a lien upon all deposits and investments maintained by the Borrower with SunTrust and any affiliates thereof.

Collateral for this Note includes, but is not limited to, the following:

All assets of Global Capital Group, L.L.C, and all proceeds and products thereof as more fully described in a Security Agreement dated August 08, 2008.

All of the foregoing security is referred to collectively as the "Collateral". Unless otherwise agreed in writing, the Collateral is security for the payment of this Note and any other liability (including overdrafts and future advances) of the Borrower to SunTrust, however evidenced, now existing or hereafter incurred, matured or unmatured, direct or indirect, absolute or contingent, several, joint, or joint and several, including any extensions, modifications or renewals. The proceeds of any Collateral may be applied against the liabilities of the Borrower to SunTrust in such order as SunTrust deems proper.

## Loan Purpose And Updated Financial Information Required

The Borrower warrants and represents that the loan evidenced by this Note is being made solely for the purpose of acquiring or carrying on a business, professional or commercial activity or acquiring real or personal property as an investment (other than a personal investment) or for carrying on an investment activity (other than a personal investment activity). The Borrower agrees to provide to SunTrust updated financial information, including, but not limited to, tax returns and current financial statements in form satisfactory to SunTrust, as well as additional information, reports or schedules (financial or otherwise), all as SunTrust may from time to time request.

## Representations and Warranties

This Note has been duly executed and delivered by Borrower, constitutes Borrower's valid and legally binding obligations and is enforceable in accordance with its terms against Borrower. The execution, delivery and performance of this Note and the consummation of the transaction contemplated will not, with or without the giving of notice or the lapse of time, (a) violate any material law applicable to Borrower, (b) violate any judgment, writ, injunction or order of any court or governmental body or officer applicable to Borrower, (c) violate or result in the breach of any material agreement to which Borrower is a party nor (d) as applicable, violate any charter, bylaws, operating agreement, partnership agreement or any other agreement by which Borrower is bound. No consent, approval, license, permit or other authorization of any third party or any governmental body or officer is required for the valid and lawful execution and delivery of this Note.

Copies: 0
Distribution: Original-Collateral File; Copy-Borrower
630106 (04/08)



Page 1 of 4



1062119840400026

## Default, Acceleration And Setoff

As used herein the term "Obligor" shall individually and collectively refer to the Borrower and any person or entity that is primarily or secondarily liable on this Note and any person or entity that has conveyed or may hereafter convey any security interest or lien to SunTrust in any real or personal property to secure payment of this Note. An "event of default" shall occur hereunder upon the occurrence of any one or more of the following events or conditions:

    (a) the failure by any Obligor to pay when due, whether by acceleration or otherwise, any amounts owed under this Note;

    (b) the occurrence of any event of default under any agreement or loan document executed in conjunction with this Note or the failure of any Obligor to perform any covenant, promise or obligation contained in this Note or any other agreement to which any Obligor and SunTrust are parties;

    (c) the breach of any representation or warranty of any Obligor contained in this Note or any other agreement with SunTrust;

    (d) the failure of any Obligor to pay when due any amount owed to any creditor other than SunTrust under a written agreement calling for the payment of money;

    (e) the death, declaration of incompetency, dissolution, liquidation, merger, consolidation, termination or suspension of usual business of any Obligor;

    (f) any person or entity, or any group of related persons or entities, shall have or obtain legal or beneficial ownership of a majority of the outstanding voting securities or rights of any Obligor that is not a natural person, other than any person or entity, or any group of related persons or entities that has such majority ownership as of the date of this Note;

    (g) the insolvency or inability to pay debts as they mature of any Obligor, the application for the appointment of a receiver for any Obligor, the filing of a petition or the commencement of a proceeding by or against any Obligor under any provision of any applicable Bankruptcy Code or other insolvency law, or statute, or any assignment for the benefit of creditors by or against any Obligor;

    (h) the entry of a judgment or the issuance or service of any attachment, levy or garnishment against any Obligor or the property of any Obligor or the repossession or seizure of property of any Obligor;

    (i) a determination by SunTrust that a material adverse change in the financial condition of any Obligor has occurred since the date of this Note;

    (j) any Obligor commits fraud or makes a material misrepresentation at any time in connection with this Note or any Collateral;

    (k) any deterioration or impairment of the Collateral or any decline or depreciation in the value of the Collateral which causes the Collateral in the judgment of SunTrust to become unsatisfactory as to character or value;

    (l) the sale or transfer by any Obligor of all or substantially all of such Obligor's assets other than in the ordinary course of business;

    (m) the termination of any guaranty of this Note by a guarantor; or

    (n) any other act or circumstances leading SunTrust to deem itself insecure.

SunTrust shall not be obligated to fund this Note or make any advance under this Note if an event of default exists or would exist if such funding occurred or such advance made. Upon the occurrence of an event of default, SunTrust shall, at its option, have the remedies provided herein and by any other agreement between SunTrust and any Obligor or under applicable law, including without limitation, declaring the entire outstanding principal balance, together with all interest thereon and any other amounts due under this Note, to be due and payable immediately without presentment, demand, protest, or notice of any kind, except notice required by law. Upon the occurrence of an event of default under section g above, the entire outstanding principal balance, together with all interest thereon and any other amounts due under this Note, shall automatically become due and payable without presentment, demand, protest, or notice of any kind except notice required by law. Upon the occurrence of an event of default, as of the date of such event of default, SunTrust, at its option, may charge interest on the unpaid balance of this Note at the lesser of (i) the Rate plus 4.00% per annum or (ii) the maximum rate allowed by law (the "Default Rate") until paid in full. To the extent permitted by law, upon default SunTrust will have the right, in addition to all other remedies provided herein, to set off the amount due under this Note or due under any other obligation to SunTrust against any and all accounts, whether checking or savings or otherwise, credits, money, stocks, bonds or other security or property of any nature whatsoever on deposit with, held by, owed by, or in the possession of, SunTrust to the credit of or for the account of any Obligor, without notice to or consent by any Obligor. The remedies provided in this Note and any other agreement between SunTrust and any Obligor and by applicable law are cumulative and not exclusive of any other remedies provided by applicable law.


## Late Charges And Other Authorized Fees And Charges

If any portion of a payment is at least 10 days past due, the Borrower agrees to pay a late charge of the lesser of $50.00 or 5% of the amount which is past due. Unless prohibited by applicable law, the Borrower agrees to pay the fee established by SunTrust from time to time for returned checks if a payment is made on this Note with a check and the check is dishonored for any reason after the second presentment. In addition to any other amounts owed under the terms of this Note, the Borrower agrees to pay those fees and charges disclosed in the attached Disbursements and Charges Summary which is incorporated in this Note by reference and, as permitted by applicable law, the Borrower agrees to pay the following: (a) all expenses, including, without limitation, any and all costs incurred by SunTrust related to default, all court costs and out-of-pocket collection expenses and reasonable attorneys' fees not to exceed 15% of the amount of the unpaid principal balance plus accrued interest and other charges due at the time this Note is referred to an attorney for collection, whether suit be brought or not, incurred in collecting this Note; (b) all costs incurred in evaluating, preserving or disposing of any Collateral granted as security for the payment of this Note, including the cost of any audits, appraisals, appraisal updates, reappraisals or environmental inspections which SunTrust from time to time in its sole discretion may deem necessary; (c) any

630106 (04/08)

premiums for property insurance purchased on behalf of the Borrower or on behalf of the owner(s) of any Collateral pursuant to any security instrument relating to any Collateral; and (d) any expenses or costs incurred in defending any claim arising out of the execution of this Note or the obligation which it evidences, or otherwise involving the employment by SunTrust of attorneys with respect to this Note and the obligations it evidences. The Borrower agrees to pay such amounts on demand or, at SunTrust's option, such amounts may be added to the unpaid balance of the Note and shall accrue interest at the stated Rate. Upon the occurrence of an event of default, or after demand and failure to pay if this Note is payable on demand, interest shall accrue at the Default Rate.

**Prepayment Provision**

Borrower may make a prepayment in any amount at any time without penalty.

**Payments**

Borrower is directed to make payments at the address indicated on the billing statement provided by SunTrust, or at such place as SunTrust may otherwise indicate in writing. Payments may also be made at those SunTrust branches which accept loan payments, however, the Borrower acknowledges that the Borrower is not directed to make payments at such branches and that SunTrust's acceptance of payments at such branches is an accommodation to the Borrower which may be revoked at any time in SunTrust's sole and absolute discretion. All amounts received by SunTrust shall be applied to expenses, late fees and interest before principal or in any other order as determined by SunTrust, in it sole discretion, as permitted by law. Payments will be credited as of the date stamped upon receipt, or as of the standard payment processing date for similar payments if a payment is not stamped. Payments received on Saturday will be credited on SunTrust's next business day. If any payment date falls on a Saturday or Sunday or a legal bank holiday, payment will be due on the next business day. SunTrust's business days are Monday through Friday, not including legal bank holidays.

**Waivers**

The Borrower and each other Obligor waive presentment, demand, protest, notice of protest and notice of dishonor and waive all exemptions, whether homestead or otherwise, as to the obligations evidenced by this Note and waive any discharge or defenses based on suretyship or impairment of Collateral or of recourse. The Borrower and each other Obligor waive any rights to require SunTrust to proceed against any other Obligor or any Collateral before proceeding against the Borrower or any of them, or any other Obligor, and agree that without notice to any Obligor and without affecting any Obligor's liability, SunTrust, at any time or times, may grant extensions of the time for payment or other indulgences to any Obligor or permit the renewal or modification of this Note, or permit the substitution, exchange or release of any Collateral for this Note and may add or release any Obligor primarily or secondarily liable. The Borrower and each other Obligor agree that SunTrust may apply all monies made available to it from any part of the proceeds of the disposition of any Collateral or by exercise of the right of setoff either to the obligations under this Note or to any other obligations of any Obligor to SunTrust, as SunTrust may elect from time to time.

**Waiver of Jury Trial**

THE BORROWER AND SUNTRUST HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR SUNTRUST ENTERING INTO OR ACCEPTING THIS NOTE. FURTHER, THE BORROWER HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF SUNTRUST, NOR SUNTRUST'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUNTRUST WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.

**Patriot Act Notice**

SunTrust hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act Title III of Pub. L. 107-56 (signed into law October 26, 2001), SunTrust may be required to obtain, verify and record information that identifies the Borrower, which information includes the name and address of the Borrower and other information that will allow SunTrust to identify the Borrower in accordance with the Act.

**Hold Harmless and Indemnification**

Borrower hereby indemnifies and agrees to hold SunTrust and its officers, directors, employees, agents and affiliates harmless from and against all claims, damages, liabilities (including attorneys' fees and legal expenses), causes of action, actions, suits and other legal proceedings (collectively, "Claims") in any matter relating to or arising out of this Note or any loan document executed in connection with this Note, or any act, event or transaction related thereto or to the Collateral. Borrower shall immediately provide SunTrust with written notice of any such Claim. Upon request of SunTrust, Borrower shall defend SunTrust from such Claims, and pay the attorneys' fees, legal expenses and other costs incurred in connection therewith, or in the alternative, SunTrust shall be entitled to employ its own legal counsel to defend such Claims at Borrower's sole expense.

**Miscellaneous**

All amounts received by SunTrust shall be applied to expenses, late fees and interest before principal or in any other order as determined by SunTrust, in it sole discretion, as permitted by law. Any provision of this Note which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Note. No amendment, modification, termination or waiver of any provision of this Note, nor consent to any departure by the Borrower from any term of this Note, shall in any event be effective unless it is in writing and signed by an authorized officer of SunTrust, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No failure or delay on the part of SunTrust to exercise any right, power or remedy under this Note shall be construed as a waiver of the right to exercise the same or any other right at any time. If the Rate is tied to an external index and the index becomes unavailable during the term of this loan,

630106 (04/08)

SunTrust may, in its sole and absolute discretion, designate a substitute index with notice to the Borrower. The captions of the paragraphs of this Note are for convenience only and shall not be deemed to constitute a part hereof or used in construing the intent of the parties. All representations, warranties, covenants and agreements contained herein or made in writing by Borrower in connection herewith shall survive the execution and delivery of this Note and any other agreement, document or writing relating to or arising out of any of the foregoing. All notices or communications given to Borrower pursuant to the terms of this Note shall be in writing and may be given to Borrower at Borrower's address as stated below or at the top of this Note unless Borrower notifies SunTrust in writing of a different address. Unless otherwise specifically provided herein to the contrary, such written notices and communications shall be delivered by hand or overnight courier service, or mailed by first class mail, postage prepaid, addressed to the Borrower at the address referred to herein. Any written notice delivered by hand or by overnight courier service shall be deemed given or received upon receipt. Any written notice delivered by U.S. Mail shall be deemed given or received on the third (3rd) business day after being deposited in the U.S. Mail.

Notwithstanding any provision of this Note or any loan document executed in connection with this Note to the contrary, the Borrower and SunTrust intend that no provision of this Note or any loan document executed in connection with this Note be interpreted, construed, applied, or enforced in a way that will permit or require the payment or collection of interest in excess of the highest rate of interest permitted to be paid or collected by the laws of the jurisdiction indicated below, or federal law if federal law preempts the law of such jurisdiction with respect to this transaction (the "Maximum Permitted Rate"). If, however, any such provision is so interpreted, construed, applied, or enforced, Borrower and SunTrust intend (a) that such provision automatically shall be deemed revised so as to require payment only of interest at the Maximum Permitted Rate; and (b) if interest payments in excess of the Maximum Permitted Rate have been received, that the amount of such excess shall be deemed credited retroactively in reduction of the then-outstanding principal amount of this obligation, together with interest at the Maximum Permitted Rate. In connection with all calculations to determine the Maximum Permitted Rate, the Borrower and SunTrust intend (a) that all charges be excluded to the extent they are properly excludable under the usury laws of such jurisdiction or the United States, as they from time to time are determined to apply to this obligation; and (b) that all charges that may be spread in the manner provided by statute of the jurisdiction indicated or any similar law, be so spread.

**Liability, Successors And Assigns And Choice Of Law**

Each Borrower shall be jointly and severally obligated and liable on this Note. This Note shall apply to and bind each of the Borrower's heirs, personal representatives, successors and permitted assigns and shall inure to the benefit of SunTrust, its successors and assigns. Notwithstanding the foregoing, Borrower shall not assign Borrower's rights or obligations under this Note without SunTrust's prior written consent. The Borrower agrees that certain material events and occurrences relating to this Note bear a reasonable relationship to the laws of Georgia. This Note shall be governed by the laws of Georgia and, unless applicable law provides otherwise, in the event of any legal proceeding arising out of or related to this Note, the Borrower consents to the jurisdiction and venue of any court located in Georgia.

**Documentary and Intangible Taxes**

In the event that any intangible tax or documentary stamp tax is due from SunTrust to any state or other governmental agency or authority because of the execution or holding of this Note, the Borrower shall, upon demand, reimburse SunTrust for any such tax paid.

**Transfer of Loan**

SunTrust may, at any time, sell, transfer or assign the Note, the related security instrument and any related loan documents, and any or all servicing rights with respect thereto, or grant participations therein or issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities"). SunTrust may forward to each purchaser, transferee, assignee, servicer, participant, or investor in such Securities or any Rating Agency (as hereinafter defined) rating such Securities (collectively, the "Investor") and each prospective Investor, all documents and information which SunTrust now has or may hereafter acquire relating to the Borrower, any loan to Borrower, any guarantor or the property, whether furnished by Borrower, any guarantor or otherwise, as SunTrust determines necessary or desirable. The term "Rating Agency" shall mean each statistical rating agency that has assigned a rating to the Securities.

By signing below under seal, the Borrower agrees to the terms of this Note and the disbursement of proceeds as described in the Disbursements and Charges Summary provided in connection with this transaction.

Global Capital Group, L.L.C.

By: _Stelian Pand_ _____

Stelian G. Pand, Manager

Borrower's Billing Address:

4700 Allison Drive
Sugarhill, GA 30518-0000

# EXHIBIT "B"

 **SUNTRUST**

**Commercial Note**

| | | |
|---|---|---|
| Borrower: | Global Capital Group, L.L.C. | Date: December 14, 2011 |
| Borrower Address: | 4700 Allison Drive | |
| | Buford, GA 30518 | |
| Loan Amount: | Two Million Dollars and no cents ($2,000,000.00) | |
| Account No.: | 21198404    Note No.: 42 | Officer: Gregory Latora, 15706 |

For value received, the borrower(s) named above whether one or more, (the "Borrower"), jointly and severally promise to pay to the order of SunTrust Bank, a Georgia banking corporation ("SunTrust") without offset in U.S. Dollars and in immediately available funds, the Loan Amount shown above, or the total of all amounts advanced under this commercial note and any modifications, renewals, extensions or replacements thereof (this "Note") if less than the full Loan Amount is advanced, plus interest and any other amounts due, upon the terms specified below.

**Loan Type:** Revolving Demand Master Borrowing Loan

**Repayment Terms:** This is an open end revolving line of credit. The Borrower shall be liable for only so much of the Loan Amount shown above as shall be equal to the total amount advanced to the Borrower, or any of them, by SunTrust from time to time, less all payments made by or for the Borrower and applied by SunTrust to principal, plus interest on each such advance, and any other amounts due. Advances under this Note shall be recorded and maintained by SunTrust in its internal records and such records shall be conclusive of the principal and interest owed by Borrower unless there is a material error in such records.  **This obligation is payable on demand.** SunTrust shall have no obligation to make advances and all  amounts outstanding are due on demand. Accrued interest will be payable on the 14th day of each month beginning on January 14, 2012 and on demand. This Master Borrowing arrangement may be terminated without notice to the undersigned by SunTrust.

**Payout Requirement**

Borrower agrees that for each twelve-month or 364-day period that this Master Revolving line is available, beginning with the date of this Note, Borrower shall maintain a zero balance outstanding on the line for at least one 30 consecutive day period.

**Interest**

Interest will accrue on an actual/360 basis (on the actual number of days elapsed over a year of 360 days).  Interest shall accrue from the date of disbursement on the unpaid balance and shall continue to accrue until this Note is paid in full.

This is a variable rate transaction.  The interest rate is prospectively subject to increase or decrease without prior notice.

Subject to the above, interest per annum payable on this Note (the "Rate") shall be a variable rate based on the following Index:

The one month LIBOR Rate as defined on the attached Addendum A, LIBOR Index Rate Addendum.

The Rate shall be equal to the Index plus 3.00% per annum.  Adjustments to the Rate shall be effective monthly on the same day of each month beginning January 01, 2012 or the next business day if such date does not fall on a business day.    The Rate shall not exceed any maximum interest rate permitted by applicable law.

**Renewal**

This Note represents a renewal and/or amendment of note number 21198404 42 dated or last renewed or extended as of March 04, 2011 executed by Borrower and does not, and is not intended to, constitute a novation of any of the indebtedness evidenced by such note.

**Collateral**

Unless otherwise agreed in writing, any collateral pledged to SunTrust to secure any of the existing or future liabilities of the Borrower to SunTrust shall also secure this Note. To the extent permitted by law, the Borrower grants to SunTrust a security interest in and a lien upon all deposits and investments maintained by the Borrower with SunTrust and any affiliates thereof.

Collateral for this Note includes, but is not limited to, the following:

All assets of Global Capital Group, L.L.C., including but not limited to accounts, inventory, furniture, fixtures and equipment, general intangibles, instruments, documents and chattel paper now existing or hereafter acquired* and all proceeds and products thereof as more fully described in a Security Agreement dated August 08, 2008.

All of the foregoing security is referred to collectively as the "Collateral". Unless otherwise agreed in writing, the Collateral is security for the payment of this Note and any other liability (including overdrafts and future advances) of the Borrower to SunTrust, however evidenced, now existing or hereafter incurred, matured or unmatured, direct or indirect, absolute or contingent, several, joint, or joint





10621198404000042

and several, including any extensions, modifications or renewals. The proceeds of any Collateral may be applied against the liabilities of the Borrower to SunTrust in such order as SunTrust deems proper.

**Loan Purpose And Updated Financial Information Required**

The Borrower warrants and represents that the loan evidenced by this Note is being made solely for the purpose of acquiring or carrying on a business, professional or commercial activity or acquiring real or personal property as an investment (other than a personal investment) or for carrying on an investment activity (other than a personal investment activity). The Borrower agrees to provide to SunTrust updated financial information, including, but not limited to, tax returns and current financial statements in form satisfactory to SunTrust, as well as additional information, reports or schedules (financial or otherwise), all as SunTrust may from time to time request.

**Representations and Warranties**

This Note has been duly executed and delivered by Borrower, constitutes Borrower's valid and legally binding obligations and is enforceable in accordance with its terms against Borrower. The execution, delivery and performance of this Note and the consummation of the transaction contemplated will not, with or without the giving of notice or the lapse of time, (a) violate any material law applicable to Borrower, (b) violate any judgment, writ, injunction or order of any court or governmental body or officer applicable to Borrower, (c) violate or result in the breach of any material agreement to which Borrower is a party nor (d) as applicable, violate any charter, bylaws, operating agreement, partnership agreement or any other agreement by which Borrower is bound. No consent, approval, license, permit or other authorization of any third party or any governmental body or officer is required for the valid and lawful execution and delivery of this Note.

**Setoff and Other Remedies**

As used herein, the term "Obligor" shall individually and collectively refer to the Borrower and any other person or entity that is primarily or secondarily liable on the Note and any person or entity that has conveyed or may hereafter convey any security interest or lien to SunTrust in any real or personal property to secure payment of this Note. To the extent permitted by law, if payment is not made upon demand, SunTrust will have the right, in addition to all other remedies permitted by law, to set off the amount due under this Note or due under any other obligation of Borrower to SunTrust against any and all accounts, whether checking or savings or otherwise, credits, money, stocks, bonds or other security or property of any nature whatsoever on deposit with, held by, owed by, or in the possession of, SunTrust to the credit of or for the account of any Obligor, without notice to or consent by any Obligor. If payment is not made upon demand, Borrower shall be deemed to be in default and SunTrust shall be entitled to interest on the unpaid balance of the Note at the lesser of (i) the Rate plus 4.00% per annum or (ii) the maximum rate allowed by law (the "Default Rate") from the time of demand until paid in full. The remedies provided in this Note and any other agreement between SunTrust and any Obligor and by applicable law are cumulative and not exclusive of any other remedies provided by applicable law.

**Late Charges And Other Authorized Fees And Charges**

If any portion of a payment is at least 10 days past due, the Borrower agrees to pay a late charge of the lesser of $50.00 or 5% of the amount which is past due. Unless prohibited by applicable law, the Borrower agrees to pay the fee established by SunTrust from time to time for returned checks if a payment is made on this Note with a check and the check is dishonored for any reason after the second presentment. In addition to any other amounts owed under the terms of this Note, the Borrower agrees to pay those fees and charges disclosed in the attached Disbursements and Charges Summary which is incorporated in this Note by reference and, as permitted by applicable law, the Borrower agrees to pay the following: (a) all expenses, including, without limitation, any and all costs incurred by SunTrust related to default, all court costs and out-of-pocket collection expenses and reasonable attorneys' fees not to exceed 15% of the amount of the unpaid principal balance plus accrued interest and other charges due at the time this Note is referred to an attorney for collection, whether suit be brought or not, incurred in collecting this Note; (b) all costs incurred in evaluating, preserving or disposing of any Collateral granted as security for the payment of this Note, including the cost of any audits, appraisals, appraisal updates, reappraisals or environmental inspections which SunTrust from time to time in its sole discretion may deem necessary; (c) any premiums for property insurance purchased on behalf of the Borrower or on behalf of the owner(s) of any Collateral pursuant to any security instrument relating to any Collateral; and (d) any expenses or costs incurred in defending any claim arising out of the execution of this Note or the obligation which it evidences, or otherwise involving the employment by SunTrust of attorneys with respect to this Note and the obligations it evidences. The Borrower agrees to pay such amounts on demand or, at SunTrust's option, such amounts may be added to the unpaid balance of the Note and shall accrue interest at the stated Rate. Upon the occurrence of an event of default, or after demand and failure to pay if this Note is payable on demand, interest shall accrue at the Default Rate.

**Prepayment Provision**

Borrower may make a prepayment in any amount at any time without penalty.

**Payments**

Borrower is directed to make payments at the address indicated on the billing statement provided by SunTrust, or at such place as SunTrust may otherwise indicate in writing. Payments may also be made at those SunTrust branches which accept loan payments, however, the Borrower acknowledges that the Borrower is not directed to make payments at such branches and that SunTrust's acceptance of payments at such branches is an accommodation to the Borrower which may be revoked at any time in SunTrust's sole and absolute discretion. All amounts received by SunTrust shall be applied to expenses, late fees and interest before principal or in any other order as determined by SunTrust, in it sole discretion, as permitted by law. Payments will be credited as of the date stamped upon receipt, or as of the standard payment processing date for similar payments if a payment is not stamped. Payments received on Saturday will be credited on SunTrust's next business day. If any payment date falls on a Saturday or Sunday or a legal bank holiday, payment will be due on the next business day. SunTrust's business days are Monday through Friday, not including legal bank holidays.

**Waivers**

The Borrower and each other Obligor waive presentment, demand, protest, notice of protest and notice of dishonor and waive all exemptions, whether homestead or otherwise, as to the obligations evidenced by this Note and waive any discharge or defenses based

on suretyship or impairment of Collateral or of recourse.  The Borrower and each other Obligor waive any rights to require SunTrust to proceed against any other Obligor or any Collateral before proceeding against the Borrower or any of them, or any other Obligor, and agree that without notice to any Obligor and without affecting any Obligor's liability, SunTrust, at any time or times, may grant extensions of the time for payment or other indulgences to any Obligor or permit the renewal or modification of this Note, or permit the substitution, exchange or release of any Collateral for this Note and may add or release any Obligor primarily or secondarily liable. The Borrower and each other Obligor agree that SunTrust may apply all monies made available to it from any part of the proceeds of the disposition of any Collateral or by exercise of the right of setoff either to the obligations under this Note or to any other obligations of any Obligor to SunTrust, as SunTrust may elect from time to time.

**Waiver of Jury Trial**

THE BORROWER AND SUNTRUST HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR SUNTRUST ENTERING INTO OR ACCEPTING THIS NOTE.  FURTHER, THE BORROWER HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF SUNTRUST, NOR SUNTRUST'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUNTRUST WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.

**Patriot Act Notice**

SunTrust hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act Title III of Pub. L. 107-56 (signed into law October 26, 2001), SunTrust may be required to obtain, verify and record information that identifies the Borrower, which information includes the name and address of the Borrower and other information that will allow SunTrust to identify the Borrower in accordance with the Act.

**Hold Harmless and Indemnification**

Borrower hereby indemnifies and agrees to hold SunTrust and its officers, directors, employees, agents and affiliates harmless from and against all claims, damages, liabilities (including attorneys' fees and legal expenses), causes of action, actions, suits and other legal proceedings (collectively, "Claims") in any matter relating to or arising out of this Note or any loan document executed in connection  with this Note, or any act, event or transaction related thereto or to the Collateral.  Borrower shall immediately provide SunTrust with written notice of any such Claim.  Upon request of SunTrust, Borrower shall defend SunTrust from such Claims, and pay the attorneys' fees, legal expenses and other costs incurred in connection therewith, or in the alternative, SunTrust shall  be entitled to employ its own legal counsel to defend such Claims at Borrower's sole expense.

**Miscellaneous**

All amounts received by SunTrust shall be applied to expenses, late fees and interest before principal or in any other order as determined by SunTrust, in it sole discretion, as permitted by law.  Any provision of this Note which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Note. No amendment, modification, termination or waiver of any provision of this Note, nor consent to any departure by the Borrower from any term of this Note, shall in any event be effective unless it is in writing and signed by an authorized officer of SunTrust, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No failure or delay on the part of SunTrust to exercise any right, power or remedy under this Note shall be construed as a waiver of the right to exercise the same or any other right at any time.  If the Rate is tied to an external index and the index becomes unavailable during the term of this loan, SunTrust may, in its sole and absolute discretion, designate a substitute index with notice to the Borrower. The captions of the paragraphs of this Note are for convenience only and shall not be deemed to constitute a part hereof or used in construing the intent of the parties.  All representations, warranties, covenants and agreements contained herein or made in writing by Borrower in connection herewith shall survive the execution and delivery of this Note and any other agreement, document or writing relating to or arising out of any of the foregoing.  All notices or communications given to Borrower pursuant to the terms of this Note shall be in writing and may be given to Borrower at Borrower's address as stated below or at the top of this Note unless Borrower notifies SunTrust in writing of a different address.  Unless otherwise specifically provided herein to the contrary, such written notices and communications shall be delivered by hand or overnight courier service, or mailed by first class mail, postage prepaid, addressed to the Borrower at the address referred to herein.  Any written notice delivered by hand or by overnight courier service shall be deemed given or received upon receipt. Any written notice delivered by U.S. Mail shall be deemed given or received on the third (3rd) business day after being deposited in the U.S. Mail.

Notwithstanding any provision of this Note or any loan document executed in connection with this Note to the contrary, the Borrower and SunTrust intend that no provision of this Note or any loan document executed in connection with this Note be interpreted, construed, applied, or enforced in a way that will permit or require the payment or collection of interest in excess of the highest rate of interest permitted to be paid or collected by the laws of the jurisdiction indicated below, or federal law if federal law preempts the law of such jurisdiction with respect to this transaction (the "Maximum Permitted Rate").  If, however, any such provision is so interpreted, construed, applied, or enforced, Borrower and SunTrust intend (a) that such provision automatically shall be deemed revised so as to require payment only of interest at the Maximum Permitted Rate; and (b) if interest payments in excess of the Maximum Permitted Rate have been received, that the amount of such excess shall be deemed credited retroactively in reduction of the then-outstanding principal amount of this obligation, together with interest at the Maximum Permitted Rate.  In connection with all calculations to determine the Maximum Permitted Rate, the Borrower and SunTrust intend (a) that all charges be excluded to the extent they are properly excludable under the usury laws of such jurisdiction or the United States, as they from time to time are determined to apply to

this obligation; and (b) that all charges that may be spread in the manner provided by statute of the jurisdiction indicated or any similar law, be so spread.

## Liability, Successors And Assigns And Choice Of Law

Each Borrower shall be jointly and severally obligated and liable on this Note. This Note shall apply to and bind each of the Borrower's heirs, personal representatives, successors and permitted assigns and shall inure to the benefit of SunTrust, its successors and assigns. Notwithstanding the foregoing, Borrower shall not assign Borrower's rights or obligations under this Note without SunTrust's prior written consent. The Borrower agrees that certain material events and occurrences relating to this Note bear a reasonable relationship to the laws of Georgia. This Note shall be governed by the laws of Georgia and, unless applicable law provides otherwise, in the event of any legal proceeding arising out of or related to this Note, the Borrower consents to the jurisdiction and venue of any court located in Georgia.

## Documentary and Intangible Taxes

In the event that any intangible tax or documentary stamp tax is due from SunTrust to any state or other governmental agency or authority because of the execution or holding of this Note, the Borrower shall, upon demand, reimburse SunTrust for any such tax paid.

## Transfer of Loan

SunTrust may, at any time, sell, transfer or assign the Note, the related security instrument and any related loan documents, and any or all servicing rights with respect thereto, or grant participations therein or issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities"). SunTrust may forward to each purchaser, transferee, assignee, servicer, participant, or investor in such Securities or any Rating Agency (as hereinafter defined) rating such Securities (collectively, the "Investor") and each prospective Investor, all documents and information which SunTrust now has or may hereafter acquire relating to the Borrower, any loan to Borrower, any guarantor or the property, whether furnished by Borrower, any guarantor or otherwise, as SunTrust determines necessary or desirable. The term "Rating Agency" shall mean each statistical rating agency that has assigned a rating to the Securities.

By signing below under seal, the Borrower agrees to the terms of this Note and the disbursement of proceeds as described in the Disbursements and Charges Summary provided in connection with this transaction.


Global Capital Group, L.L.C.

By: _____

Stelian G. Pand, Member


Borrower's Billing Address:
4700 Allison Drive
Buford, GA 30518

 **SUNTRUST**

**Addendum A to Note**
**Libor Index Rate (104)**

## SECTION 1

**Definitions.** As used in this Addendum, the following terms shall have the meanings set forth below:

"Bank" shall mean SunTrust Bank and its successors and assigns.

"Borrower" shall collectively and individually refer to the undersigned, the maker of the attached note dated December 14, 2011 ("Note"). The terms of this Addendum are hereby incorporated into the Note and in the event of any conflict between the terms of the Note and the terms of this Addendum, the terms of this Addendum shall control.

"Business Day" shall mean, with respect to Interest Periods applicable to the LIBOR Rate, a day on which the Bank is open for business and on which dealings in U.S. dollar deposits are carried on in the London Inter-Bank Market.

"Interest Period" shall mean a period of one (1) month, provided that (i) the initial Interest Period may be less than one month, depending on the initial funding date and (ii) no Interest Period shall extend beyond the maturity date of the Note.

"Interest Rate Determination Date" shall mean the date the Note is initially funded and the first Business Day of each calendar month thereafter.

"LIBOR Rate" shall mean that rate per annum effective on any Interest Rate Determination Date which is equal to the quotient of:

(i) the rate per annum equal to the offered rate for deposits in U.S. dollars for a one (1) month period, which rate appears on that page of Bloomberg reporting service, or such similar service as determined by the Bank, that displays British Bankers' Association interest settlement rates for deposits in U.S. Dollars, as of 11:00 A.M. (London, England time) two (2) Business Days prior to the Interest Rate Determination Date; provided, that if no such offered rate appears on such page, the rate used for such Interest Period will be the per annum rate of interest determined by the Bank to be the rate at which U.S. dollar deposits for the Interest Period, are offered to the Bank in the London Inter-Bank Market as of 11:00 A.M. (London, England time), on the day which is two (2) Business Days prior to the Interest Rate Determination Date, divided by

(ii) a percentage equal to 1.00 *minus* the maximum reserve percentages (including any emergency, supplemental, special or other marginal reserves) expressed as a decimal (rounded upward to the next 1/100th of 1%) in effect on any day to which the Bank is subject with respect to any LIBOR loan pursuant to regulations issued by the Board of Governors of the Federal Reserve System with respect to eurocurrency funding (currently referred to as "eurocurrency liabilities" under Regulation D). This percentage will be adjusted automatically on and as of the effective date of any change in any reserve percentage.

"Prime Rate" shall mean the publicly announced prime lending rate of the Bank from time to time in effect, which rate may not be the lowest or best lending rate made available by the Bank or, if the Note is governed by Subtitle 10 of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, "Prime Rate" shall mean the Wall Street Journal Prime Rate, which is the Prime Rate published in the "Money Rates" section of the *Wall Street Journal* from time to time.

## SECTION 2

**Interest.** The Borrower shall pay interest upon the unpaid principal balance of the Note at the LIBOR Rate plus the margin provided in the Note. Interest shall be due and payable as provided in the Note and shall be calculated as described in the Note. The interest rate shall remain fixed during each month based upon the interest rate established pursuant to this Addendum on the applicable Interest Rate Determination Date.

## SECTION 3

**Additional Costs.** In the event that any applicable law or regulation or the interpretation or administration thereof by any governmental authority charged with the interpretation or administration thereof (whether or not having the force of law) (i) shall change the basis of taxation of payments to the Bank of any amounts payable by the Borrower hereunder (other than taxes imposed on the overall net income of the Bank) or (ii) shall impose, modify or deem applicable any reserve, special deposit or similar requirement against assets of, deposits with or for the account of, or credit extended by the Bank, or (iii) shall impose any other condition with respect to the Note, and the result of any of the foregoing is to increase the cost to the Bank of making or maintaining the Note or to reduce any amount receivable by the Bank hereunder, and the Bank determines that such increased costs or reduction in amount receivable was attributable to the LIBOR Rate basis used to establish the interest rate hereunder, then the Borrower shall from time to time, upon demand by the Bank, pay to the Bank additional amounts sufficient to compensate the Bank for such increased costs (the "Additional Costs"). A detailed statement as to the amount of such Additional Costs, prepared in good faith and submitted to the Borrower by the Bank, shall be conclusive and binding in the absence of manifest error.

Copies: 0
Distribution: Original – Collateral File; Copy - Borrower
630426 (11/05)



 42621198404000042

**SECTION 4.**

**Unavailability Of Dollar Deposits.**  If the Bank determines in its sole discretion at any time (the "Determination Date") that it can no longer make, fund or maintain LIBOR based loans for any reason, including without limitation illegality, or the LIBOR Rate cannot be ascertained or does not accurately reflect the Bank's cost of funds, or the Bank would be subject to Additional Costs that cannot be recovered from the Borrower, then the Bank will notify the Borrower and thereafter will have no obligation to make, fund or maintain LIBOR based loans.  Upon such Determination Date the Note will be converted to a variable rate loan based upon the Prime Rate. Thereafter the interest rate on the Note shall adjust simultaneously with any fluctuation in the Prime Rate.

Global Capital Group, L.L.C.

By: _____

Stelian G. Pand, Member

# EXHIBIT "C"



**Unconditional Guaranty**

*This guaranty of Stelian G Pand ("Guarantor") dated August 08, 2008, provides*

**Whereas,** Global Capital Group, L L C (herein, whether one or more, the "Borrower") desires to transact business with and to obtain credit or a continuation of credit from SunTrust Bank, its present and future affiliates and their successors and assigns (collectively, "SunTrust"), and

**Whereas,** SunTrust is unwilling to extend or continue credit to Borrower unless it receives a guaranty from the undersigned Guarantor with respect to the Obligations, as defined below, of Borrower to SunTrust,

**Now, Therefore,** in consideration of the premises and of other good and valuable consideration and in order to induce SunTrust from time to time, in its sole discretion, to extend or continue credit to or enter into other transactions with Borrower, Guarantor absolutely and unconditionally guarantees to SunTrust performance and payment when due, whether by acceleration or otherwise, of any and all Obligations of Borrower to SunTrust, together with all interest and charges related thereto, and all reasonable attorneys' fees (in the amount of 15% of the principal and interest guaranteed hereby if this guaranty is governed by the laws of Georgia), and all costs and expenses of collection incurred by SunTrust in enforcing the Obligations or this guaranty, subject to the provisions contained herein

1    The term "Obligations" or "Obligation" as used herein shall include, without limitation, any and all liabilities, obligations, agreements and undertakings of Borrower to SunTrust in any amount, whether now existing or hereafter arising (including those owed by Borrower to others and acquired by SunTrust through purchase, assignment or otherwise), however created, evidenced or arising, whether individually or jointly with others, and whether absolute or contingent, direct or indirect, as maker, endorser, guarantor, surety or otherwise, liquidated or unliquidated, matured or unmatured, whether or not secured by collateral, and including, without limitation, (a) all obligations to perform or forbear from performing any acts, (b) all overdrafts on deposits or accounts maintained by Borrower with SunTrust, and (c) the liabilities, obligations, agreements and undertakings of Borrower to SunTrust pursuant to any foreign exchange contract or any interest rate hedge agreement or other derivative transaction agreement or pursuant to any application or other agreement requesting SunTrust to issue any letter of credit including, without limitation, the obligation of Borrower to reimburse SunTrust for all amounts funded by SunTrust pursuant to any such letter of credit, and (d) all costs of collection including reasonable attorneys' fees, whether such collection occurs prior to, during, or after any bankruptcy proceedings filed by or against Borrower

The amount of the Guarantor's liability under this guaranty shall be unlimited

2    This guaranty is a continuing guaranty, shall remain in force irrespective of any interruptions in the business relations of Borrower with SunTrust and shall apply to and guarantee any balance which shall remain due by Borrower to SunTrust, provided, however, that Guarantor may, by written notice delivered personally to an officer of SunTrust or received by registered mail by an officer of SunTrust, terminate this guaranty with respect to all Obligations of the Borrower incurred or contracted by the Borrower or acquired by SunTrust after the date on which the notice is actually received by such officer Such termination shall not be applicable to any Obligation incurred prior to the receipt of such notice by SunTrust

3    SunTrust may at any time and from time to time, in the exercise of its sole discretion, either before or after default by Borrower or revocation or termination of this guaranty, without the consent of or notice to Guarantor, and without incurring responsibility to Guarantor, or releasing or impairing the liability of Guarantor, or any security available to SunTrust, upon or without any terms or conditions

a    Change the manner, place, or terms of payment (including payment amounts and rate of interest) and/or change or extend the time of payment, renew or alter any Obligation, any collateral or security therefore, or any Obligation incurred directly or indirectly in respect thereof, and this guaranty shall apply to the Obligations as so changed, extended, renewed or altered,

b    Sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any collateral or security at any time held by or available to SunTrust for any Obligation, or for any obligations of Guarantor or any person secondarily or otherwise liable for any of the Obligations, SunTrust shall have full authority to adjust, compromise and receive less than the amount due upon any such collateral,

c    Exercise or refrain from exercising any rights against Borrower, Guarantor or others, or otherwise act or refrain from acting,

d    Release, compromise, or agree not to sue, in whole or in part, Borrower, Guarantor or any other party obligated on any of the Obligations,

e    Apply any sums received by it from any source to any Obligation or Obligations, in such order of application as Sun Trust may elect, regardless of what Obligation or Obligations remain unpaid All payments shall be conclusively presumed to have been made by Borrower and no payment shall operate to reduce the obligation of a Guarantor unless, at the time

Copies 0
Distribution Original – Collateral File
Copy - Guarantor
630071 (02/06)




0712119840400018

Page 1

such payments are made, written notice is delivered to an officer of SunTrust that such payments are made by a Guarantor in reduction of Guarantor's liability hereunder, and such payments are actually made by Guarantor, and

f    Fail to set-off and release, in whole or in part, any balance of any deposit account or credit on its books in favor of Borrower, or any other person liable for any of the Obligations, and may extend further credit in any manner to Borrower, and generally deal with Borrower or any security or other person liable for any of the Obligations as SunTrust, in its sole discretion, may see fit

4    As security for the payment of the Obligations and the obligation of Guarantor hereunder, Guarantor hereby assigns and grants a security interest to SunTrust in (a) all property of Guarantor in or coming into the possession, control or custody of SunTrust, or in which SunTrust has or hereafter acquires a lien, security interest, or other right, and (b) any existing or hereafter created lien or security interest in favor of Guarantor in any property of Borrower

5    Guarantor waives notice of acceptance of the guaranty and notice, including notice of default, on any Obligation to which it may apply, and waives notice of presentment and demand for payment of any of the Obligations, suit or other action taken by SunTrust against, and any other notice to, Guarantor or to any other party liable for the Obligations  Guarantor waives all defenses, offsets and counterclaims which Guarantor may at any time have to any claim of SunTrust against Borrower  Except for any limitation which is specified above with respect to the amount of the maximum liability of Guarantor, this is an unconditional guaranty, and the liability of Guarantor to SunTrust shall not be terminated or in any way limited by reason or as the result of anything set forth or contained in any writing evidencing all or any part of the Obligations, nor shall it be limited to a proportionate part of the total of the Obligations  This is a guaranty of payment and not of collection and Guarantor waives any right to require that any action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of SunTrust in favor of Borrower or any other person and agrees that SunTrust is not responsible for the validity, perfection, recordation or enforceability of any collateral or security for the Obligations

6    Guarantor hereby ratifies, confirms, and adopts all the terms, conditions, agreements and stipulations of all notes and other evidences of the Obligations heretofore or hereafter executed  Without in any way limiting the generality of the foregoing, Guarantor waives and renounces any and all homestead exemption right Guarantor may have under or by virtue of the Constitution or laws of any state, or the United States, as against the obligation hereby created, provided however, that such waiver shall not apply to any obligation created hereunder which arises from any of the Obligations that are consumer credit transactions, and Guarantor does hereby transfer, convey and assign, and direct any Trustee in Bankruptcy or receiver to deliver to SunTrust, a sufficient amount of property or money in any homestead exemption that may be allowed to Guarantor to pay any Obligation in full and all costs of collection  Guarantor waives and renounces any defense to any of the Obligations which may be available to or could be asserted by Borrower, except for payment

Guarantor also waives all rights under Section 10-7-24 of the Official Code of Georgia Annotated, as amended, including any right to require SunTrust to proceed against Borrower

7    Guarantor subordinates all indebtedness of Borrower owing to Guarantor, whether now existing or hereafter arising, to the Obligations  Guarantor further agrees that it shall not be subrogated to, and will not enforce on its behalf, any right of action which SunTrust may have against Borrower until every Obligation shall have been paid in full  SunTrust shall have the right, immediately and without further action by it, to set off against any obligation of Guarantor to SunTrust, all money owed by SunTrust in any capacity to Guarantor, whether or not due

8    A subsequent guaranty by Guarantor shall not be deemed to be in lieu of or to supersede or terminate this guaranty but shall be construed as an additional or supplementary guaranty unless otherwise expressly provided therein, and in the event Guarantor, or any other guarantor, has given to SunTrust a previous guaranty or guaranties, this guaranty shall be construed to be an additional or supplemental guaranty, and not to be in lieu thereof or to terminate such previous guaranty or guaranties unless expressly so provided herein

9    This guaranty shall be binding on the Guarantor, notwithstanding the failure of any further contemplated guarantor(s) to execute similar instruments and notwithstanding the fact that the signature of one or more other parties guaranteeing the Obligations or any other existing or future signature shall be forged or unauthorized  The revocation of this guaranty in the manner permitted hereunder by Guarantor or any other party guaranteeing the Obligation, or the release by SunTrust of any one or more parties guaranteeing the Obligations, or the death of Borrower or Guarantor or any other party guaranteeing the Obligations, shall not affect or limit the liability of Guarantor, and SunTrust shall be under no duty to notify Guarantor of any such revocation, release or death

10    Guarantor warrants to SunTrust that Guarantor has adequate means to obtain from Borrower on a continuing basis information concerning the financial condition of Borrower and that Guarantor is not relying on SunTrust to provide such information either now or in the future  Guarantor waives all errors and omissions in connection with SunTrust's administration of the Obligations except behavior which amounts to gross negligence or willful misconduct

11    No invalidity, irregularly or unenforceability of all or any part of the Obligations or of any collateral or security therefor shall affect, impair, or be a defense to this guaranty, and this guaranty is a primary obligation of Guarantor

12    The term "Guarantor" as used herein shall mean the undersigned Guarantor and if the undersigned is a partnership or limited liability company, the obligations and liability of Guarantor shall remain in full force and applicable notwithstanding any changes in the identity of the parties comprising the partnership or limited liability company, and the term "Guarantor" shall

include any altered or successor partnership or limited liability company, and the predecessor partnership or limited liability company, and their partners or member/managers shall not thereby be released from any obligation or liability

13   No delay on the part of SunTrust in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights, no notice to or demand on Guarantor shall be deemed to be a waiver of the obligation of Guarantor or of the right of SunTrust to take further action without notice or demand as provided herein, nor in any event shall any modification or waiver of the provisions of this guaranty be effective unless in writing signed by SunTrust nor shall any such waiver be applicable except in the specific instance for which given

14   Guarantor agrees to provide to SunTrust updated financial information, including, but not limited to, tax returns and current financial statements in form satisfactory to SunTrust, as well as additional information, reports or schedules (financial or otherwise), all as SunTrust may from time to time request

15   Notwithstanding the fact that the Obligations of Borrower may have been paid in full and this guaranty may have been returned to Guarantor, the obligations of Guarantor hereunder shall continue in full force and effect with respect to any amounts that SunTrust may ever be required to repay under any Bankruptcy or insolvency laws

16   This guaranty shall not be construed to impose any obligation on SunTrust to extend or continue any credit at any time

17   Each reference herein to Borrower shall be deemed to include Borrower and its successors and assigns   Each reference herein to SunTrust shall be deemed to include its successors and assigns, in whose favor the provisions of this guaranty shall also inure  Each reference herein to Guarantor shall be deemed to include heirs, executors, administrators, legal representatives, successors and assigns, all of whom shall be bound by the provisions of this guaranty

18   Guarantor agrees that certain material events and occurrences relating to this guaranty bear a reasonable relationship to the laws of Georgia  This guaranty shall be governed by the laws of Georgia and, unless applicable law provides otherwise, in the event of any legal proceeding arising out of or related to this guaranty, the Guarantor consents to the jurisdiction and venue of any court located in Georgia  To the extent that any provision in this guaranty is inconsistent with applicable law, SunTrust will comply with applicable law

WAIVER OF JURY TRIAL  GUARANTOR AND SUNTRUST HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY AND ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO THIS PROVISION IS A MATERIAL INDUCEMENT FOR SUNTRUST ENTERING INTO OR ACCEPTING THIS GUARANTY FURTHER, GUARANTOR HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF SUNTRUST, NOR SUNTRUST'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUNTRUST WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION

The undersigned Guarantor has read, understands and agrees to the provisions of this guaranty and has executed the same voluntarily under seal, with full authority and with the intent to be legally bound by its terms, conditions and obligations

_____ (Seal)
Stelian G  Pand

# EXHIBIT "D"

07/29/2002 18:23 FAX  7705359647                    SUNTRUST PAGE                    ✆009/096



**Personal Financial Statement**

| Section 1 – Applicant Information | | | | Section 2 – Co-Applicant Information (When completed and signed denotes intent to apply for joint credit) | | | |
|---|---|---|---|---|---|---|---|
| Name Stefan G. Pand | | | | Name | | | |
| Date of Birth | | Social Security Number | | Date of Birth | | Social Security Number | |
| Residence Address 3125 New University Trail | | | | Residence Address | | | |
| City, State, Zip Cumming, GA 30041 | | | | City, State, Zip | | | |
| Position or Occupation Managing Member | | | Number of Years 7 | Position or Occupation | | | Number of Years |
| Employer Name Global Capital Group LLC | | | | Employer Name | | | |
| Residential Telephone 770-330-8331 | | Business Telephone 1-898-236-30 | | Residential Telephone | | Business Telephone | |
| Nearest Relative Not Living With Me | | Relationship | Telephone | Nearest Relative Not Living With Me | | Relationship | Telephone |
| Address | | | | Address | | | |
| Driver's License (ID) Number 049465998 | Expiration Date 06/20/2009 | Date Issued 5/6/2005 | State Issued GA | Driver's License (ID) Number | Expiration Date | Date Issued | State Issued |

**Section 3 – Statement of Financial Condition as of**

Indicate "A" (Applicant), "C" (Co-Applicant), or "J" (Jointly Held With Others) beside assets and liabilities to indicate to whom item applies.

| ASSETS | A, C or J | $ Amount | LIABILITIES | A, C or J | $ Amount |
|---|---|---|---|---|---|
| Cash on hand & in banks-Schedule A | | | Notes payable to banks – secured – Schedule E | | |
| IRAs 401(k) & Retirement Assets | | | Notes payable to banks – unsecured – Schedule E | | |
| U.S. Gov't & Marketable Securities-Schedule B | | | Due to brokers-margin loans – Schedule E | | |
| Securities held by broker in margin accounts | | | Amounts payable to others – secured | | |
| Restricted or Control Stocks (Public Co. only) | | | Credit Cards – Schedule E | | |
| Real Estate Owned – Schedule C | | | Equity Lines – Schedule E | | |
| Loans Receivable | | | Unpaid Taxes (Income, Property, etc.) | | |
| Cash value – life Insurance – Schedule D | | | Real estate mortgages payable – Schedule C | | |
| Value of Closely Held Business | | | Other Debts – Itemize | | |
| Automobiles and other personal property | | | | | |
| Other Assets – Itemize | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL LIABILITIES | | |
| | | | NET WORTH | | |
| TOTAL ASSETS | | | TOTAL LIABILITIES AND NET WORTH | | |

| INCOME FOR YEAR ENDED: | Applicant | Co-Applicant | EXPENSES | | |
|---|---|---|---|---|---|
| Salary | | | Rent payment | | |
| Bonuses and Commissions | | | Alimony | | |
| Interest & Dividends | | | Child Support | | |
| Rental Income | | | Tuition | | |
| Other Income (Alimony or child support need not be revealed if you do not wish to have it considered as a basis for repaying this obligation) | | | PERSONAL INFORMATION (both Applicant and Co-Applicant) | | |
| | | | Are you a U.S. Citizen?   ☒ Yes   ☐ No | | |
| TOTAL INCOME | | | Do you have a will?   ☒ Yes   ☐ No   If so, name of executor | | |
| **CONTINGENT LIABILITIES** | | | Diana Pand | | |
| Do you have any contingent liabilities? If so, describe | | | Are you a partner or officer in any other venture? If so describe | | |
| | | | | | |
| | | | Income tax settled through (date) | | |
| As endorser, co-maker or guarantor? | | | Are any assets pledged other than as described on schedules? If so, describe | | |
| On leases or contracts? | | | | | |
| Legal claims | | | Are you a defendant in any suits or legal actions? If so describe | | |
| Other special debt | | | | | |
| Amount of contested income tax liens | | | Have you or your businesses ever been declared bankrupt?   ☐ Yes   ☒ No | | |

**Complete Schedules and Sign on Page 2**

07/29/2002 18:23 FAX  7705359647     SUNTRUST BANK     ☑010/096

## SCHEDULE A – Cash and Investments

| Type of Account | Name of Bank or Broker | In Name Of | Are These Pledged? | Current Balance |
|---|---|---|---|---|
| | | | ☐Yes ☐No | |
| | | | ☐Yes ☐No | |
| | | | ☐Yes ☐No | |
| | | | ☐Yes ☐No | |
| | | | TOTAL | |

## SCHEDULE B – U.S. Government & Marketable Securities

| Number of Shares | Description | In Name Of | Are These Pledged? | Date of Value | Value |
|---|---|---|---|---|---|
| | | | ☐Yes ☐No | | |
| | | | ☐Yes ☐No | | |
| | | | ☐Yes ☐No | | |
| | | | ☐Yes ☐No | | |
| | | | | TOTAL | |

## SCHEDULE C – Real Estate Owned

| | (1) Address of Property | (2) Property Description Type Commercial (C), Residential (R), Agricultural (A). Use: Office, Warehouse, Home, Lot, Etc. Square Footage. | | | (3) Cost | (4) Date Acquired | (5) Current Market Value |
|---|---|---|---|---|---|---|---|
| | | Type | Use | Size | | | |
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| | | | | | | TOTAL | |

| | (6) Name of Lender | (7) Title In Name Of | (8) Mortgage Balance | (9) Monthly Payment | (10) Monthly Rental Income | (11) Ownership Percentage |
|---|---|---|---|---|---|---|
| 1 | | | | | | % |
| 2 | | | | | | % |
| 3 | | | | | | % |
| 4 | | | | | | % |
| | | | | | TOTAL | |

## SCHEDULE D – Life Insurance Carried, Including Whole Life and Group Insurance

| Name of Insurance Company | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | TOTAL | |

## SCHEDULE E – Banks or Finance Companies Where Credit Has Been Obtained

| Name of Lender | Collateral Description | Type (Line of Credit, Term Loan) | Maximum Line Amount | Monthly Payment | Current Balance | Maturity |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | TOTAL | | |

It is my/our intent to apply for individual/joint credit. Therefore, each of the undersigned hereby instructs, consents and authorizes SunTrust Bank, or any affiliate, subsidiary or other entity related thereto ("Lender") to obtain a consumer credit report and any other information relating to their individual credit status in the following circumstances: (a) relating to the opening of an account or upon application for a loan or other product or service offered by Lender by a commercial entity of which the undersigned is a principal, member, guarantor or other party, (b) thereafter, periodically according to the Lender's credit review and audit procedures, and (c) relating to Lender's review or collection of a loan, account, or other Lender product or service made or intended to a commercial entity of which the undersigned is a principal, member, guarantor or other party.

Each of the undersigned certify that everything stated on the first page and second page of this Personal Financial Statement and any other documents or information submitted in connection with this Personal Financial Statement is true, accurate and complete. Each of the undersigned understands that Lender will retain this Personal Financial Statement. Each of the undersigned hereby authorizes Lender to verify at any time any information submitted to Lender by or on behalf of the undersigned, obtain further information concerning the credit standing of the undersigned, including without limitation, credit and employment history, and exchange credit information concerning the undersigned with other individuals or entities, including, without limitation, any affiliate, subsidiary or other entity related to SunTrust Bank. Each of the undersigned authorizes Lender to consider this Personal Financial Statement as a continuing statement of financial condition until replaced by a new Personal Financial Statement or until the undersigned specifically notifies Lender in writing of any change in such financial condition.

This Personal Financial Statement, including the consent to obtain consumer credit report contained above is executed by the undersigned(s) on the date(s) listed below.

Customer Signature (Applicant) _Stelian Pand_    Customer Signature (Co-Applicant) _____

Printed Name (Applicant) _STELIAN PAND_    Printed Name (Co-Applicant) _____

Date Signed _7/23/08_    Date Signed _____

311233 (7/04)  MKT 0500-04
SunTrust Corporate Forms

Page 2 of 2

07/29/2002 18:23 FAX  7705359647    SUNTRUST BANK    Ø011/098

## 2008 Personal Net Worth Statement

### Assets

E-Trade Investible Account

| Investment Assets | $189,768 |
| Cash | $32,871 |
| Checking - Wachovia | $36,899 |
| Money Market - Wachovia | $100,500 |
| Value of the Personal Residence | $450,000 |
| Value of the Personal Automobiles | $40,000 |

**Total Assets**                    **$ 850,038.00**

### Liabilities

| Personal Mortgage | Country Wide | $176,290 | Payments of $998.00 |
| Credit Card Debt | | $500.00 | Paid Off every month |

**Total Liabilities**                    **$ 176,790.00**

**Total Personal Networth**                    **$ 673,248.00**

# EXHIBIT "E"

 **SunTrust**

**Personal Financial Statement**

090807504322

| Section 1 – Applicant Information | | | Section 2 – Co-Applicant Information *(When completed and signed denotes intent to apply for joint credit)* | | |
|---|---|---|---|---|---|
| Name Stefan C. Pand | | | Name | | |
| Date of Birth | Social Security Number | | Date of Birth | Social Security Number | |
| Residence Address 3125 New University Trail | | | Residence Address | | |
| City, State, Zip Cumming, GA 30041 | | | City, State, Zip | | |
| Position or Occupation Managing Member | | Number of Years 8 | Position or Occupation | | Number of Years |
| Employer Name Global Capital Group LLC | | | Employer Name | | |
| Residential Telephone 770-330-8331 | Business Telephone 1-888-236-30 | | Residential Telephone | Business Telephone | |
| Nearest Relative Not Living With Me | Relationship | Telephone | Nearest Relative Not Living With Me | Relationship | Telephone |
| Address | | | Address | | |
| Driver's License (ID) Number 49465998 | Expiration Date 06/20/2009 | Date Issued 5/6/2005 | Driver's License (ID) Number | Expiration Date | Date Issued | State issued |

| Driver's License State issued GA |
|---|

**Section 3 – Statement of Financial Condition as of**

Indicate "A" (Applicant), "C" (Co-Applicant), or "J" (Jointly Held With Others) beside assets and liabilities to indicate to whom item applies.

| ASSETS | A, C or J | $ Amount | LIABILITIES | A, C or J | $ Amount |
|---|---|---|---|---|---|
| Cash on hand & in banks-Schedule A | | | Notes payable to banks – secured – Schedule E | | |
| IRAs 401(k) & Retirement Assets | | | Notes payable to banks – unsecured – Schedule E | | |
| U.S. Gov't & Marketable Securities-Schedule B | | | Due to brokers-margin loans – Schedule E | | |
| Securities held by broker in margin accounts | | | Amounts payable to others – secured | | |
| Restricted or Control Stocks (Public Co. only) | | | Credit Cards – Schedule E | | |
| Real Estate Owned – Schedule C | | | Equity Lines – Schedule E | | |
| Loans Receivable | | | Unpaid Taxes (Income, Property, etc.) | | |
| Cash value – life insurance – Schedule D | | | Real estate mortgages payable – Schedule C | | |
| Value of Closely Held Business | | | Other Debts – Itemize | | |
| Automobiles and other personal property | | | | | |
| Other Assets – Itemize | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL LIABILITIES | | |
| | | | NET WORTH | | |
| TOTAL ASSETS | | | TOTAL LIABILITIES AND NET WORTH | | |

| INCOME FOR YEAR ENDED: | Applicant | Co-Applicant | EXPENSES 0 | |
|---|---|---|---|---|
| Salary | | | Rent payment | |
| Bonuses and Commissions | | | Alimony | |
| Interest & Dividends | | | Child Support | |
| Rental Income | | | Tuition | |

| | | | PERSONAL INFORMATION (both Applicant and Co-Applicant) | |
|---|---|---|---|---|
| Other Income (Alimony or child support need not be revealed if you do not wish to have it considered as a basis for repaying this obligation) | | | Are you a U.S. Citizen?      Yes    No | |
| TOTAL INCOME | | | Do you have a will?      Yes    No    If so, name of executor | |
| CONTINGENT LIABILITIES | | | | |
| Do you have any contingent liabilities? If so, describe | | | Are you a partner or officer in any other venture? If so describe | |
| | | | Income tax settled through (date) | |
| As endorser, co-maker or guarantor? | | | Are any assets pledged other than as described on schedules? If so, describe | |
| On leases or contracts? | | | | |
| Legal claims | | | Are you a defendant in any suits or legal actions? If so describe | |
| Other special debt | | | | |
| Amount of contested income tax liens | | | Have you or your businesses ever been declared bankrupt?   Yes    No | |

**Complete Schedules and Sign on Page 2**

## SCHEDULE A – Cash and Investments

| Type of Account | Name of Bank or Broker | In Name Of | Are These Pledged? | Current Balance |
|---|---|---|---|---|
| | | | Yes   No | |
| | | | Yes   No | |
| | | | Yes   No | |
| | | | Yes   No | |
| | | | TOTAL | |

## SCHEDULE B – U.S. Government & Marketable Securities

| Number of Shares | Description | In Name Of | Are These Pledged | Date of Value | Value |
|---|---|---|---|---|---|
| | | | Yes   No | | |
| | | | Yes   No | | |
| | | | Yes   No | | |
| | | | Yes   No | | |
| | | | | TOTAL | |

## SCHEDULE C – Real Estate Owned

| (1) Address of Property | (2) Property Description Type: Commercial (C), Residential (R), Agricultural (A). Use: Office, Warehouse, Home, Lot.  Size: Square Footage. | | | (3) Cost | (4) Date Acquired | (5) Current Market Value |
|---|---|---|---|---|---|---|
| | Type | Use | Size | | | |
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| | | | | | TOTAL | |

| (6) Name of Lender | (7) Title In Name Of | (8) Mortgage Balance | (9) Monthly Payment | (10) Monthly Rental Income | (11) Ownership Percentage |
|---|---|---|---|---|---|
| 1 | | | | | % |
| 2 | | | | | % |
| 3 | | | | | % |
| 4 | | | | | % |
| | | | TOTAL | | |

## SCHEDULE D – Life Insurance Carried, Including Whole Life and Group Insurance

| Name of Insurance Company | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | TOTAL | |

## SCHEDULE E – Banks or Finance Companies Where Credit Has Been Obtained.

| Name of Lender | Collateral Description | Type (Line of Credit, Term Loan) | Maximum Line Amount | Monthly Payment | Current Balance | Maturity |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | TOTAL | | |

It is my/our intent to apply for individual/joint credit. Therefore, each of the undersigned hereby instructs, consents and authorizes SunTrust Bank, or any affiliate, subsidiary or other entity related thereto ("Lender") to obtain a consumer credit report and any other information relating to their individual credit status in the following circumstances: (a) relating to the opening of an account or upon application for a loan or other product or service offered by Lender by a commercial entity of which the undersigned is a principal, member, guarantor or other party, (b) thereafter, periodically according to the Lender's credit review and audit procedures, and (c) relating to Lender's review or collection of a loan, account, or other Lender product or service made or extended to a commercial entity of which the undersigned is a principal, member, guarantor or other party.

Each of the undersigned certify that everything stated on the first page and second page of this Personal Financial Statement and any other documents or information submitted in connection with this Personal Financial Statement is true, accurate and complete. Each of the undersigned understands that Lender will retain this Personal Financial Statement. Each of the undersigned hereby authorize Lender to verify at any time any information submitted to Lender by or on behalf of the undersigned; obtain further information concerning the credit standing of the undersigned, including without limitation, credit and employment history; and exchange credit information concerning the undersigned with other individuals

or entities, including, without limitation, any affiliate, subsidiary or other entity related to SunTrust Bank. Each of the undersigned authorize Lender to consider this Personal Financial Statement as a continuing statement of financial condition until replaced by a new Personal Financial Statement or until the undersigned specifically notifies Lender in writing of any change in such financial condition.

This Personal Financial Statement, including the consent to obtain consumer credit report contained above is executed by the undersigned(s) on the date(s) listed below

Customer Signature (Applicant)_____     Customer Signature (Co-Applicant)_____

Printed Name (Applicant) Stelian Pana_____     Printed Name (Co-Applicant)_____

Date Signed 03/15/2009_____     Date Signed_____

313225 (7/06)  MKT 5600-04
SunTrust Corporate Forms

Page 4 of 4

2008 Personal Net Worth Statement

**Assets**

E-Trade Investible Account          Investment Assets

| | |
|---|---|
| Cash | $190,782 |
| Checking - Wachovia | $42,873 |
| Money Market - Wachovia | $54,839 |
| Value of the Personal Residence | $178,900 |
| Value of the Personal Automobiles | $450,000 |
| | $40,000 |

**Total Assets**          **$ 857,374.00**

**Liabilities**

| | | |
|---|---|---|
| Personal Mortgage | Country Wide | $0 |
| Credit Card Debt | | $500.00    Paid Off every month |

**Total Liabilities**          **$    500.00**

**Total Personal Networth**          **$ 856,874.00**

# EXHIBIT "F"

# SUNTRUST

## Personal Financial Statement

| Section 1 – Applicant Information | | | Section 2 – Co-Applicant Information *(When completed and signed denotes intent to apply for joint credit)* | | |
|---|---|---|---|---|---|
| Name **Stelian Pand** | | | Name | | |
| Date of Birth | Social Security Number | | Date of Birth | Social Security Number | |
| Residence Address **2425 New Universty Trail** | | | Residence Address | | |
| City, State, Zip **Cumming, GA 30041** | | | City, State, Zip | | |
| Position or Occupation **Managing Manager** | | Number of Years **9** | Position or Occupation | | Number of Years |
| Employer Name **Global Capital Group** | | | Employer Name | | |
| Residential Telephone **7703308331** | Business Telephone | | Residential Telephone | Business Telephone | |
| Nearest Relative Not Living With Me | Relationship | Telephone | Nearest Relative Not Living With Me | Relationship | Telephone |
| Address | | | Address | | |

| Driver's License (ID) Number **049465998** | Expiration Date **0620/2014** | Date Issued **6/20/2009** | State issued **GA** | Driver's License (ID) Number | Expiration Date | Date Issued | State Issued |
|---|---|---|---|---|---|---|---|

### Section 3 – Statement of Financial Condition as of

Indicate "A" (Applicant), "C" (Co-Applicant), or "J" (Jointly Held With Others) beside assets and liabilities to indicate to whom item applies.

| ASSETS | A, C or J | $ Amount | LIABILITIES | A, C or J | $ Amount |
|---|---|---|---|---|---|
| Cash on hand & in banks–Schedule A | | $316,678.00 | Notes payable to banks – secured – Schedule E | | |
| IRAs 401(k) & Retirement Assets | | | Notes payable to banks – unsecured – Schedule E | | |
| U.S. Gov't & Marketable Securities-Schedule B | | | Due to brokers–margin loans – Schedule E | | |
| Securities held by broker in margin accounts | | $159,984.00 | Amounts payable to others – secured | | |
| Restricted or Control Stocks (Public Co. only) | | | Credit Cards – Schedule E | | |
| Real Estate Owned – Schedule C | | $320,000.00 | Equity Lines – Schedule C | | |
| Loans Receivable | | | Unpaid Taxes (Income, Property, etc.) | | |
| Cash value – life insurance – Schedule D | | | Real estate mortgages payable – Schedule C | | |
| Value of Closely Held Business | | | Other Debts – Itemize | | |
| Automobiles and other personal property | | $75,000.00 | | | |
| Other Assets – Itemize | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL LIABILITIES | | |
| | | | NET WORTH | | $871,662.00 |
| TOTAL ASSETS | | $871,662.00 | TOTAL LIABILITIES AND NET WORTH | | $871,662.00 |

| INCOME FOR YEAR ENDED: | | Applicant | Co-Applicant | EXPENSES | |
|---|---|---|---|---|---|
| Salary | | $132,506.00 | | Rent payment | |
| Bonuses and Commissions | | $890,052.00 | | Alimony | |
| Interest & Dividends | | | | Child Support | |
| Rental income | | | | Tuition | |
| Other income (Alimony or child support need not be revealed if you do not wish to have it considered as a basis for repaying this obligation) | | | | **PERSONAL INFORMATION (both Applicant and Co-Applicant)** | |
| | | | | Are you a U.S. Citizen?    ☒ Yes    ☐ No | |
| TOTAL INCOME | | $1,022,558.00 | | Do you have a will?    ☒ Yes    ☐ No    If so, name of executor **Diana Pand** | |
| CONTINGENT LIABILITIES | | | | | |
| Do you have any contingent liabilities? If so, describe | | | | Are you a partner or officer in any other venture? If so describe | |
| | | | | Income tax settled through (date)    **12/31/2009** | |
| As endorser, co-maker or guarantor? | | | | Are any assets pledged other than as described on schedules? If so, describe | |
| On leases or contracts? | | | | | |
| Legal claims | | | | Are you a defendant in any suits or legal actions? If so describe | |
| Other special debt | | | | | |
| Amount of contested income tax liens | | | | Have you or your businesses ever been declared bankrupt?    ☐ Yes    ☒ No | |

**Complete Schedules and Sign on Page 2**

## SCHEDULE A – Cash and Investments

| Type of Account | Name of Bank or Broker | In Name Of | Are These Pledged? | | Current Balance |
|---|---|---|---|---|---|
| Wachovia CHK | Wachovia | Self | ☐ Yes ☒ No | | $51,678.00 |
| MMA | Wachovia | Self | ☐ Yes ☒ No | | $140,000.00 |
| CD | Wachovia | Self | ☐ Yes ☒ No | | $125,000.00 |
| (2) | | | ☐ Yes ☐ No | | |
| (3) | | | | TOTAL | $316,678.00 |

## SCHEDULE B – U.S. Government & Marketable Securities

| Number of Shares | Description | In Name Of | Are These Pledged | | Date of Value | Value |
|---|---|---|---|---|---|---|
| (1) | | | ☐ Yes ☐ No | | | |
| (2) | | | ☐ Yes ☐ No | | | |
| (3) | | | ☐ Yes ☐ No | | | |
| (4) | | | ☐ Yes ☐ No | | | |
| (5) | | | | | TOTAL | |

## SCHEDULE C – Real Estate Owned

| | (1) Address of Property | (2) Property Description Type: Commercial (C), Residential (R), Agricultural (A). Use: Office, Warehouse, Home, Lot. Size: Square Footage. | | | (3) Cost | (4) Date Acquired | (5) Current Market Value |
|---|---|---|---|---|---|---|---|
| | | Type | Use | Size | | | |
| 1 | 3125 New University Trail | | | | $250,000.00 | | $320,000.00 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| | | | | | | TOTAL | $320,000.00 |

| | (6) Name of Lender | (7) Title In Name Of | (8) Mortgage Balance | (9) Monthly Payment | (10) Monthly Rental Income | (11) Ownership Percentage |
|---|---|---|---|---|---|---|
| 1 | Paid off | | | | | % |
| 2 | | | | | | % |
| 3 | | | | | | % |
| 4 | | | | | | % |
| | | | | TOTAL | | |

## SCHEDULE D – Life Insurance Carried, Including Whole Life and Group Insurance

| Name of Insurance Company | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | TOTAL | |

## SCHEDULE E – Banks or Finance Companies Where Credit Has Been Obtained

| Name of Lender | Collateral Description | Type (Line of Credit, Term Loan) | Maximum Line Amount | Monthly Payment | Current Balance | Maturity |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | TOTAL | | |

It is my/our intent to apply for individual/joint credit. Therefore, each of the undersigned hereby instructs, consents and authorizes SunTrust Bank, or any affiliate, subsidiary or other entity related thereto ("Lender") to obtain a consumer credit report and any other information relating to their individual credit status in the following circumstances: (a) relating to the opening of an account or upon application for a loan or other product or service offered by Lender by a commercial entity of which the undersigned is a principal, member, guarantor or other party, (b) thereafter, periodically according to the Lender's credit review and audit procedures, and (c) relating to Lender's review or collection of a loan, account, or other Lender product or service made or extended to a commercial entity of which the undersigned is a principal, member, guarantor or other party.

Each of the undersigned certify that everything stated on the first page and second page of this Personal Financial Statement and any other documents or information submitted in connection with this Personal Financial Statement is true, accurate and complete. Each of the undersigned understands that Lender will retain this Personal Financial Statement. Each of the undersigned hereby authorize Lender to verify at any time any information submitted to Lender by or on behalf of the undersigned; obtain further information concerning the credit standing of the undersigned, including without limitation, credit and employment history; and exchange credit information concerning the undersigned with other individuals or entities, including, without limitation, any affiliate, subsidiary or other entity related to SunTrust Bank. Each of the undersigned authorize Lender to consider this Personal Financial Statement as a continuing statement of financial condition until replaced by a new Personal Financial Statement or until the undersigned specifically notifies Lender in writing of any change in such financial condition.

This Personal Financial Statement, including the consent to obtain consumer credit report contained above is executed by the undersigned(s) on the date(s) listed below.

Customer Signature (Applicant) _____    Customer Signature (Co-Applicant) _____

Printed Name (Applicant)  Stelian Pand _____    Printed Name (Co-Applicant) _____

Date Signed _____    Date Signed _____

 **SunTrust**

**Attestation Statement**

<u>Important:</u>   **This Attestation Statement must be signed, dated, and returned any time the SunTrust Personal Financial Statement form is not used to provide financial information.**

### It Is My/Our Intent To Apply For Individual/Joint Credit Or Guarantee Credit Of Another Party

Therefore, each of the undersigned hereby instructs, consents and authorizes SunTrust Bank, or any affiliate, subsidiary or other entity related thereto ("Lender") to obtain a consumer credit report and any other information relating to their individual credit status in the following circumstances: (a) relating to the opening of an account or upon application for a loan or other product or service offered by Lender by the undersigned or a commercial entity of which the undersigned is a principal, member, guarantor or other party, (b) thereafter, periodically according to the Lender's credit review and audit procedures, and (c) relating to Lender's review or collection of a loan, account, or other Lender product or service made or extended to the undersigned or a commercial entity of which the undersigned is a principal, member, guarantor or other party.

Each of the undersigned certifies that everything stated on the personal financial statement submitted with this Attestation Statement and any other documents or information submitted in connection with the personal financial statement (the "Personal Financial Statement"), is true, accurate and complete. Each of the undersigned understands that Lender will retain this Personal Financial Statement. Each of the undersigned hereby authorizes Lender to verify at any time any information submitted to Lender by or on behalf of the undersigned; to obtain further information concerning the credit standing of the undersigned, including without limitation, credit and employment history; and to exchange credit information concerning the undersigned with other individuals or entities, including, without limitation, any affiliate, subsidiary or other entity related to SunTrust Bank. Each of the undersigned authorizes Lender to consider the Personal Financial Statement as a continuing statement of financial condition until replaced by a new personal financial statement or until the undersigned specifically notifies Lender in writing of any change in such financial condition.

The Personal Financial Statement is submitted to Lender, and this Attestation Statement, including the consent to obtain consumer credit report contained above, is executed by the undersigned as of the date(s) indicated below.

| Applicant | | |
|---|---|---|
| Signature | Printed Name | Date Signed (m/d/yyyy) |
| *[signature]* | STECIAN PANG | 9/28/10 |

| Co-Applicant | | |
|---|---|---|
| Signature | Printed Name | Date Signed (m/d/yyyy) |
| | | |

# EXHIBIT "G"

 **SunTrust**

# Personal Financial Statement

| Section 1 – Applicant Information | Section 2 – Co-Applicant Information *(When completed and signed denotes intent to apply for joint credit)* |
|---|---|

| Name Stelian Pand | Name |
|---|---|

| Date of Birth | Social Security Number | Date of Birth | Social Security Number |
|---|---|---|---|

| Residence Address 3125 New Universtiy Trail | Residence Address |
|---|---|

| City, State, Zip Cumming, GA 30041 | City, State, Zip |
|---|---|

| Position or Occupation Managing Manager | Number of Years 10 | Position or Occupation | Number of Years |
|---|---|---|---|

| Employer Name Global Capital Group | Employer Name |
|---|---|

| Residential Telephone 7703308331 | Business Telephone | Residential Telephone | Business Telephone |
|---|---|---|---|

| Nearest Relative Not Living With Me | Relationship | Telephone | Nearest Relative Not Living With Me | Relationship | Telephone |
|---|---|---|---|---|---|

| Address | Address |
|---|---|

| Driver's License (ID) Number 049465998 | Expiration Date 0620/2014 | Date Issued 6/20/2009 | State issued GA | Driver's License (ID) Number | Expiration Date | Date Issued | State issued |
|---|---|---|---|---|---|---|---|

## Section 3 – Statement of Financial Condition as of

Indicate "A" (Applicant), "C" (Co-Applicant), or "J" (Jointly Held With Others) beside assets and liabilities to indicate to whom item applies.

| ASSETS | A, C or J | $ Amount | LIABILITIES | A, C or J | $ Amount |
|---|---|---|---|---|---|
| Cash on hand & in banks-Schedule A | | $513,955.00 | Notes payable to banks – secured – Schedule E | | |
| IRAs 401(k) & Retirement Assets | | | Notes payable to banks – unsecured – Schedule E | | |
| U.S. Gov't & Marketable Securities-Schedule B | | | Due to brokers-margin loans – Schedule E | | |
| Securities held by broker in margin accounts | | $131,500.00 | Amounts payable to others – secured | | |
| Restricted or Control Stocks (Public Co. only) | | | Credit Cards – Schedule E | | $10,000.00 |
| Real Estate Owned – Schedule C | | $320,000.00 | Equity Lines – Schedule E | | |
| Loans Receivable | | | Unpaid Taxes (Income, Property, etc.) | | |
| Cash value – life insurance – Schedule D | | | Real estate mortgages payable – Schedule C | | |
| Value of Closely Held Business | | | Other Debts – Itemize | | |
| Automobiles and other personal property | | $75,000.00 | | | |
| Other Assets – Itemize | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL LIABILITIES | | $10,000.00 |
| | | | NET WORTH | | $1,030,455.00 |
| TOTAL ASSETS | | $1,040,455.00 | TOTAL LIABILITIES AND NET WORTH | | $1,040,455.00 |

| INCOME FOR YEAR ENDED: | Applicant | Co-Applicant | EXPENSES | |
|---|---|---|---|---|
| Salary | $132,506.00 | | Rent payment | |
| Bonuses and Commissions | $1,390,917.00 | | Alimony | |
| Interest & Dividends | | | Child Support | |
| Rental income | | | Tuition | |
| Other income (Alimony or child support need not be revealed if you do not wish to have it considered as a basis for repaying this obligation) | | | **PERSONAL INFORMATION (both Applicant and Co-Applicant)** | |
| | | | Are you a U.S. Citizen?    ☒ Yes    ☐ No | |
| TOTAL INCOME | $1,523,839.00 | | Do you have a will?    ☒ Yes    ☐ No    If so, name of executor | |
| CONTINGENT LIABILITIES | | | Diana Pand | |
| Do you have any contingent liabilities? If so, describe | | | Are you a partner or officer in any other venture? If so describe | |
| | | | Income tax settled through (date)    12/31/2010 | |
| As endorser, co-maker or guarantor? | | | Are any assets pledged other than as described on schedules? If so, describe | |
| On leases or contracts? | | | | |
| Legal claims | | | Are you a defendant in any suits or legal actions? If so describe | |
| Other special debt | | | | |
| Amount of contested income tax liens | | | Have you or your businesses ever been declared bankrupt?    ☐ Yes    ☒ No | |

**Complete Schedules and Sign on Page 2**

## SCHEDULE A – Cash and Investments

| Type of Account | Name of Bank or Broker | In Name Of | Are These Pledged? | Current Balance |
|---|---|---|---|---|
| Wachovia CHK | Wachovia | Self | ☐ Yes ☒ No | $45,955.00 |
| MMA | Wachovia | Self | ☐ Yes ☒ No | $173,000.00 |
| CD | Wachovia | Self | ☐ Yes ☒ No | $145,000.00 |
| CD | Bank Of America | Self | ☐ Yes ☒ No | $150,000.00 |
| | | | TOTAL | $513,955.00 |

## SCHEDULE B – U.S. Government & Marketable Securities

| Number of Shares | Description | In Name Of | Are These Pledged | Date of Value | Value |
|---|---|---|---|---|---|
| | | | ☐ Yes ☐ No | | |
| | | | ☐ Yes ☐ No | | |
| | | | ☐ Yes ☐ No | | |
| | | | ☐ Yes ☐ No | | |
| | | | TOTAL | | |

## SCHEDULE C – Real Estate Owned

| (1) Address of Property | (2) Property Description Type: Commercial (C), Residential (R), Agricultural (A). Use: Office, Warehouse, Home, Lot. Size: Square Footage. | | | (3) Cost | (4) Date Acquired | (5) Current Market Value |
|---|---|---|---|---|---|---|
| | Type | Use | Size | | | |
| 1    3125 New University Trail | | | | $250,000.00 | | $320,000.00 |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| | | | | | TOTAL | $320,000.00 |

| (6) Name of Lender | (7) Title In Name Of | (8) Mortgage Balance | (9) Monthly Payment | (10) Monthly Rental Income | (11) Ownership Percentage |
|---|---|---|---|---|---|
| 1    Paid off | | | | | % |
| 2 | | | | | % |
| 3 | | | | | % |
| 4 | | | | | % |
| | | | TOTAL | | |

## SCHEDULE D – Life Insurance Carried, Including Whole Life and Group Insurance

| Name of Insurance Company | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | TOTAL | |

## SCHEDULE E – Banks or Finance Companies Where Credit Has Been Obtained

| Name of Lender | Collateral Description | Type (Line of Credit, Term Loan) | Maximum Line Amount | Monthly Payment | Current Balance | Maturity |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | TOTAL | | | |

It is my/our intent to apply for individual/joint credit. Therefore, each of the undersigned hereby instructs, consents and authorizes SunTrust Bank, or any affiliate, subsidiary or other entity related thereto ("Lender") to obtain a consumer credit report and any other information relating to their individual credit status in the following circumstances: (a) relating to the opening of an account or upon application for a loan or other product or service offered by Lender by a commercial entity of which the undersigned is a principal, member, guarantor or other party, (b) thereafter, periodically according to the Lender's credit review and audit procedures, and (c) relating to Lender's review or collection of a loan, account, or other Lender product or service made or extended to a commercial entity of which the undersigned is a principal, member, guarantor or other party.

Each of the undersigned certify that everything stated on the first page and second page of this Personal Financial Statement and any other documents or information submitted in connection with this Personal Financial Statement is true, accurate and complete. Each of the undersigned understands that Lender will retain this Personal Financial Statement. Each of the undersigned hereby authorize Lender to verify at any time any information submitted to Lender by or on behalf of the undersigned; obtain further information concerning the credit standing of the undersigned, including without limitation, credit and employment history; and exchange credit information concerning the undersigned with other individuals or entities, including, without limitation, any affiliate, subsidiary or other entity related to SunTrust Bank. Each of the undersigned authorize Lender to consider this Personal Financial Statement as a continuing statement of financial condition until replaced by a new Personal Financial Statement or until the undersigned specifically notifies Lender in writing of any change in such financial condition.

This Personal Financial Statement, including the consent to obtain consumer credit report contained above is executed by the undersigned(s) on the date(s) listed below.

Customer Signature (Applicant) _____ Customer Signature (Co-Applicant) _____

Printed Name (Applicant) __Stelian Pand__    Printed Name (Co-Applicant) _____

Date Signed __11 / 7 / 11__    Date Signed _____

# EXHIBIT "H"

GLOBAL CAPITAL GROUP, LLC
Income Statement
For the Nine Months Ending September 30, 2011

| | Current Month | | Year to Date | |
|---|---|---|---|---|
| **Revenues** | | | | |
| Service Income | S    783,489.26 | 100.00 | S    8,129,367.55 | 100.00 |
| | | | | |
| **Total Revenues** | 783,489.26 | 100.00 | 8,129,367.55 | 100.00 |
| | | | | |
| **Cost of Goods Sold** | | | | |
| Officer Salaries | 24,800.00 | 3.17 | 207,000.00 | 2.55 |
| Employee Salaries | 183,570.35 | 23.43 | 1,835,559.38 | 22.58 |
| Software development Comission | 340,840.86 | 43.50 | 3,912,561.95 | 48.13 |
| Employee Payroll Tax | 23,099.26 | 2.95 | 283,583.18 | 3.49 |
| Employee Benefit Program | 9,891.37 | 1.26 | 91,236.27 | 1.12 |
| | | | | |
| **Total Cost of Goods Sold** | 582,201.84 | 74.31 | 6,329,940.68 | 77.87 |
| | | | | |
| **Gross Profit** | 201,287.42 | 25.69 | 1,799,426.87 | 22.13 |
| | | | | |
| **Expenses** | | | | |
| Adversting Expense | 5,360.00 | 0.68 | 49,580.00 | 0.61 |
| Accounting Expense | 1,500.00 | 0.19 | 13,500.00 | 0.17 |
| Amortization Expense | 625.00 | 0.08 | 5,625.00 | 0.07 |
| Auto Expense | 6,642.33 | 0.85 | 38,526.61 | 0.47 |
| Bank Charge Expense | 911.30 | 0.12 | 5,105.60 | 0.06 |
| Computer Services & Supplies Exp. | 4,897.25 | 0.63 | 58,379.95 | 0.72 |
| Delivery and Freight Expense | 3,148.92 | 0.40 | 31,591.28 | 0.39 |
| Equipment Rent Expense | 1,983.56 | 0.25 | 18,973.53 | 0.23 |
| Rent - Building Expense | 5,975.00 | 0.76 | 53,757.00 | 0.66 |
| Legal and Professional Expense | 6,892.37 | 0.88 | 67,950.60 | 0.84 |
| Repair & Maintenance Expense | 5,791.23 | 0.74 | 48,927.56 | 0.60 |
| Insurance Expense | 1,020.00 | 0.13 | 9,180.00 | 0.11 |
| Interest Expenses | 2,879.95 | 0.37 | 26,557.00 | 0.33 |
| Janitor/ Cleaning Expense | 230.00 | 0.03 | 1,895.60 | 0.02 |
| Meals and Entertainment | 5,890.38 | 0.75 | 42,859.98 | 0.53 |
| Supplies Expense | 7,285.61 | 0.93 | 76,981.25 | 0.95 |
| Office Expense | 3,562.16 | 0.43 | 29,872.30 | 0.37 |
| Postage Expense | 678.42 | 0.09 | 6,250.33 | 0.08 |
| Telephone Expense | 2,968.27 | 0.38 | 26,795.88 | 0.33 |
| Tools Expense | 1,845.33 | 0.24 | 15,698.63 | 0.19 |
| Training/ Education Expense | 8,755.00 | 1.12 | 28,956.00 | 0.36 |
| Travel Expense | 15,972.59 | 2.04 | 82,058.59 | 1.01 |
| Utilities Expense | 750.36 | 0.10 | 6,785.51 | 0.08 |
| Other Expense | 5,688.43 | 0.73 | 48,977.24 | 0.60 |
| | | | | |
| **Total Expenses** | 101,051.46 | 12.90 | 794,741.64 | 9.78 |
| | | | | |
| **Net Income** | S    100,235.96 | 12.79 | S    1,004,685.23 | 12.36 |

For Management Purposes Only

## Global Capital Group LLC
## Accounts Receivables Aging Report
### As of September 30th 2011

| Company/Account Name | Current | 31 - 60 Days | 61 - 90 Days | 90 > | Total Due |
|---|---|---|---|---|---|
| American Cancer Society | $ 32,385.00 | $ 43,721.00 | $ - | $ - | $ 76,106.00 |
| Ga Public Broadcasting | $ 59,388.00 | $ 74,882.00 | $ - | $ 844.00 | $ 135,114.00 |
| Day Train Media | $ 23,884.00 | $ 33,774.00 | $ - | $ 231.00 | $ 57,889.00 |
| Beama Life | $ 29,938.00 | $ 33,842.00 | $ - | $ - | $ 63,780.00 |
| Suade | $ 18,377.00 | $ 8,382.00 | $ - | $ - | $ 26,759.00 |
| Audi North America | $ 52,883.00 | $ 50,855.00 | $ - | $ - | $ 103,738.00 |
| Exact Target | $ 32,932.00 | $ 52,991.00 | $ - | $ - | $ 85,923.00 |
| Bunkspeed | $ 28,301.00 | $ 39,372.00 | $ - | $ - | $ 67,673.00 |
| Silver Pop | $ 67,399.00 | $ 59,399.00 | $ - | $ - | $ 126,798.00 |
| Coca Cola | $ 37,937.00 | $ 47,283.00 | $ - | $ - | $ 85,220.00 |
| CPA WAY | $ 29,549.00 | $ 37,392.00 | $ - | $ 13.00 | $ 66,954.00 |
| Various Resource Corporation | $ 8,477.00 | $ 2,939.00 | $ - | $ - | $ 11,416.00 |
| ITF Holding | $ - | $ 19,399.00 | $ - | $ - | $ 19,399.00 |
| XL Marketing | $ 36,748.00 | $ 33,992.00 | $ - | $ - | $ 70,740.00 |
| AgeMart Solution | $ 21,638.00 | $ 62,883.00 | $ - | $ - | $ 84,521.00 |
| Enterprise Global Roma | $ 7,366.00 | $ 17,277.00 | $ - | $ - | $ 24,643.00 |
| Nationwide Cash | $ 38,479.00 | $ 49,857.00 | $ - | $ - | $ 88,336.00 |
| DCT Systems | $ - | $ 29,384.00 | $ - | $ - | $ 29,384.00 |
| SEMS Technology | $ 10,200.00 | $ 23,822.00 | $ - | $ - | $ 34,022.00 |
| Autoappender | $ 19,837.00 | $ 29,837.00 | $ - | $ - | $ 49,674.00 |
| Lockeed | $ 28,737.00 | $ 38,733.00 | $ - | $ - | $ 67,470.00 |
| One on One Marketing | $ 39,377.00 | $ 28,741.00 | $ - | $ 23.00 | $ 68,141.00 |
| FTTC Commerce | $ 1,656.00 | $ 17,362.00 | $ - | $ - | $ 19,018.00 |
| Quivana | $ 25,478.00 | $ 17,563.00 | $ - | $ - | $ 43,041.00 |
| NK Hos | $ 16,744.00 | $ 16,048.00 | $ - | $ - | $ 32,792.00 |
| Resource Capital | $ 18,477.00 | $ 7,291.00 | $ - | $ - | $ 25,768.00 |
| Microtel Media | $ 29,842.00 | $ 37,477.00 | $ - | $ - | $ 67,319.00 |
| Studio 127 | $ 1,748.00 | $ 1,232.00 | $ - | $ - | $ 2,980.00 |
| GA Bell | $ - | $ - | $ - | $ - | $ - |
| Atlantic Capital | $ 9,872.00 | $ 11,828.00 | $ - | $ - | $ 21,700.00 |
| World wide analytics | $ 21,473.00 | $ 8,277.00 | $ - | $ - | $ 29,750.00 |
| Arcapita | $ 28,477.00 | $ 9,238.00 | $ - | $ - | $ 37,715.00 |
| NG Tech | $ 18,291.00 | $ 21,929.00 | $ - | $ - | $ 40,220.00 |
| Atlantis Media | $ 7,366.00 | $ 16,266.00 | $ - | $ - | $ 23,632.00 |
| On the Net | $ 27,588.00 | $ 26,488.00 | $ - | $ - | $ 54,076.00 |
| Sony | $ 47,381.00 | $ 23,682.00 | $ - | $ - | $ 71,063.00 |
| Exact Target | $ 28,577.00 | $ 33,748.00 | $ - | $ - | $ 62,325.00 |
| Jim Beane | $ 63,972.00 | $ 33,738.00 | $ - | $ - | $ 97,710.00 |
| Phillips Consumer Goods | $ 40,388.00 | $ 47,837.00 | $ - | $ - | $ 88,225.00 |

# Global Capital Group LLC
## Accounts Receivables Aging Report
### As of September 30th 2011

| | | | | |
|---|---|---|---|---|
| Genesis Marketing | $ 24,773.00 | $ 43,892.00 | $ - | $ 68,665.00 |
| Southern Craft | $ 73,884.00 | $ 23,784.00 | $ - | $ 97,668.00 |
| Elequao | $ 52,834.00 | $ 47,849.00 | $ - | $ 100,683.00 |
| Blue Phoenix Media | $ 38,485.00 | $ 36,483.00 | $ - | $ 74,968.00 |
| Adtech | $ 33,948.00 | $ 42,911.00 | $ - | $ 76,859.00 |
| Info Media | $ 9,873.00 | $ 15,733.00 | $ - | $ 25,606.00 |
| Citrix Online | $ 8,277.00 | $ 21,837.00 | $ - | $ 30,114.00 |
| CB Press | $ 23,847.00 | $ 18,283.00 | $ - | $ 42,130.00 |
| Intro Tech Media | $ 18,288.00 | $ 28,331.00 | $ - | $ 46,619.00 |
| Sprint Test | $ 11,500.00 | $ 11,500.00 | $ - | $ 23,000.00 |
| Alliance Title | $ 19,283.00 | $ 16,271.00 | $ - | $ 35,554.00 |
| **TOTAL** | **$ 1,678,297.00** | **$ 1,676,681.00** | **$ 1,111.00** | **$ 3,356,089.00** |

Page 2

# EXHIBIT "I"

## GLOBAL CAPITAL GROUP, LLC
### Balance Sheet
September 30, 2010

### ASSETS

| | | |
|---|---:|---:|
| Current Assets | | |
| Cash in Bank-Checking | $        484,249.43 | |
| Account Receivable | 2,452,722.26 | |
| | | |
| Total Current Assets | | 2,936,971.69 |
| | | |
| Property and Equipment | | |
| Equipments | 411,937.00 | |
| Accumulated depreciation | (261,352.21) | |
| Remodeling | 75,000.00 | |
| Accumulated depreciation | (20,625.00) | |
| | | |
| Total Property and Equipment | | 204,959.79 |
| | | |
| Total Assets | | $    3,141,931.48 |

### LIABILITIES AND CAPITAL

| | | |
|---|---:|---:|
| Current Liabilities | | |
| Payroll Taxes Payable | $        36,258.96 | |
| Line of Credit Payable | 699,000.00 | |
| | | |
| Total Current Liabilities | | 735,258.96 |
| | | |
| Long-Term Liabilities | | |
| Loan Payable | 267,418.18 | |
| | | |
| Total Long-Term Liabilities | | 267,418.18 |
| | | |
| Total Liabilities | | 1,002,677.14 |
| | | |
| Capital | | |
| Paid in Capital | 276,421.33 | |
| Retained Earnings | 962,672.20 | |
| Common Stock | 10,000.00 | |
| Net Income | 890,160.81 | |
| | | |
| Total Capital | | 2,139,254.34 |
| | | |
| Total Liabilities & Capital | | $    3,141,931.48 |

Unaudited - For Management Purposes Only

## GLOBAL CAPITAL GROUP, LLC
### Income Statement
For the Nine Months Ending September 30, 2010

| | Current Month | | Year to Date | |
|---|---|---|---|---|
| **Revenues** | | | | |
| Service Income | $ 680,972.36 | 100.00 | $ 6,213,133.36 | 100.00 |
| | | | | |
| **Total Revenues** | 680,972.36 | 100.00 | 6,213,133.36 | 100.00 |
| | | | | |
| **Cost of Goods Sold** | | | | |
| Officer Salaries | 14,000.00 | 2.06 | 126,000.00 | 2.03 |
| Employee Salaries | 176,950.00 | 25.98 | 1,592,685.92 | 25.63 |
| Software development Comission | 308,395.95 | 45.29 | 2,810,240.32 | 45.23 |
| Employee Payroll Tax | 19,916.09 | 2.92 | 179,258.94 | 2.89 |
| Employee Benefit Program | 8,525.39 | 1.25 | 78,768.48 | 1.27 |
| | | | | |
| **Total Cost of Goods Sold** | 527,787.43 | 77.50 | 4,786,953.66 | 77.05 |
| | | | | |
| **Gross Profit** | 153,184.93 | 22.50 | 1,426,179.70 | 22.95 |
| | | | | |
| **Expenses** | | | | |
| Adversting Expense | 4,720.00 | 0.69 | 43,029.28 | 0.69 |
| Accounting Expense | 1,050.00 | 0.15 | 9,450.00 | 0.15 |
| Amortization Expense | 625.00 | 0.09 | 5,625.00 | 0.09 |
| Auto Expense | 4,589.69 | 0.67 | 31,990.56 | 0.51 |
| Bank Charge Expense | 632.91 | 0.09 | 2,255.68 | 0.04 |
| Computer Services & Supplies Exp. | 3,825.00 | 0.56 | 23,237.76 | 0.37 |
| Delivery and Freight Expense | 2,890.65 | 0.42 | 22,757.07 | 0.37 |
| Equipment Rent Expense | 1,672.39 | 0.25 | 13,593.44 | 0.22 |
| Rent - Building Expense | 5,973.00 | 0.88 | 53,757.00 | 0.87 |
| Legal and Professional Expense | 6,540.00 | 0.96 | 58,860.00 | 0.95 |
| Repair & Maintenance Expense | 4,580.00 | 0.67 | 28,706.72 | 0.46 |
| Insurance Expense | 974.00 | 0.14 | 8,766.00 | 0.14 |
| Interest Expenses | 1,240.22 | 0.18 | 11,162.00 | 0.18 |
| Janitor/ Cleaning Expense | 170.00 | 0.02 | 1,575.00 | 0.03 |
| Meals and Entertainment | 3,280.00 | 0.48 | 24,791.20 | 0.40 |
| Supplies Expense | 4,325.00 | 0.64 | 43,511.14 | 0.70 |
| Office Expense | 2,490.00 | 0.37 | 21,988.96 | 0.35 |
| Postage Expense | 800.96 | 0.12 | 5,832.96 | 0.09 |
| Telephone Expense | 2,280.00 | 0.33 | 19,098.24 | 0.31 |
| Tools Expense | 680.00 | 0.10 | 7,057.00 | 0.11 |
| Training/ Education Expense | 1,200.00 | 0.18 | 12,128.00 | 0.20 |
| Travel Expense | 6,520.00 | 0.96 | 50,722.56 | 0.82 |
| Utilities Expense | 509.33 | 0.07 | 4,490.04 | 0.07 |
| Other Expense | 3,515.00 | 0.52 | 31,633.28 | 0.51 |
| | | | | |
| **Total Expenses** | 65,083.15 | 9.56 | 536,018.89 | 8.63 |
| | | | | |
| **Net Income** | $ 88,101.78 | 12.94 | $ 890,160.81 | 14.33 |

For Management Purposes Only

# Global Capital Group LLC
## Accounts Receivables Aging Report
### As of September 30th 2010

| Company/Account Name | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | 90 > | Total Due |
|---|---|---|---|---|---|---|
| American Cancer Society | $ 92,322.00 | $ - | $ 5,239.00 | $ 132.00 | $ - | $ 97,693.00 |
| Ga Public Broadcasting | $ - | $ 28,945.00 | $ - | $ 598.00 | $ - | $ 29,543.00 |
| Day Train Media | $ 98,739.00 | $ 54,987.00 | $ - | $ - | $ - | $ 153,726.00 |
| Beama Life | $ 7,893.00 | $ 78,030.00 | $ - | $ - | $ - | $ 85,923.00 |
| Suade | $ 9,830.00 | $ - | $ 8,991.00 | $ - | $ - | $ 18,821.00 |
| Audi North America | $ 78,392.00 | $ 34,392.00 | $ 2,191.00 | $ - | $ - | $ 114,975.00 |
| Exact Target | $ 109,201.00 | $ 9,321.00 | $ - | $ - | $ - | $ 118,522.00 |
| Bunkspeed | $ 28,301.00 | $ 59,372.00 | $ - | $ - | $ 51.00 | $ 87,724.00 |
| Silver Pop | $ 107,399.00 | $ 87,399.00 | $ - | $ - | $ - | $ 194,798.00 |
| Coca Cola | $ - | $ 89,379.00 | $ - | $ - | $ - | $ 89,379.00 |
| CPA WAY | $ 54,829.00 | $ 29,392.00 | $ 9,872.00 | $ 1,283.00 | $ - | $ 95,376.00 |
| Various Resource Corporation | $ 79,321.00 | $ 3,991.00 | $ 3,890.00 | $ - | $ - | $ 87,202.00 |
| ITF Holding | $ 13,290.00 | $ 28,930.00 | $ 18,343.00 | $ - | $ - | $ 60,563.00 |
| XL Marketing | $ - | $ - | $ 17,409.34 | $ - | $ - | $ 17,409.34 |
| AgeMart Solution | $ 72,134.00 | $ - | $ - | $ - | $ - | $ 72,134.00 |
| Enterprise Global Roma | $ 8,903.00 | $ 9,301.00 | $ - | $ - | $ - | $ 18,204.00 |
| Nationwide Cash | $ 10,937.00 | $ 14,382.00 | $ 938.00 | $ 1,939.00 | $ - | $ 28,196.00 |
| DCT Systems | $ 39,938.00 | $ 43,728.00 | $ 37,299.00 | $ 3,892.00 | $ 8,391.00 | $ 133,248.00 |
| SEMS Technology | $ 39,200.00 | $ 3,822.00 | $ 938.00 | $ 920.00 | $ - | $ 44,880.00 |
| Autoappender | $ - | $ - | $ - | $ - | $ - | $ - |
| Lockeed | $ - | $ - | $ - | $ - | $ - | $ - |
| One on One Marketing | $ - | $ - | $ - | $ - | $ - | $ - |
| FITC | $ 9,382.00 | $ 19,392.00 | $ 1,938.00 | $ 23.00 | $ - | $ 30,735.00 |
| Quivana | $ 788.00 | $ - | $ 1,832.82 | $ - | $ - | $ 2,620.82 |
| NK Hos | $ 8,399.00 | $ 39,920.00 | $ - | $ - | $ - | $ 48,319.00 |
| Resource Capital | $ 38,997.00 | $ 19,281.00 | $ 13,922.11 | $ - | $ - | $ 72,200.11 |
| Microtel Media | $ 83,999.00 | $ 83,999.00 | $ - | $ - | $ - | $ 167,998.00 |
| Studio 127 | $ 33,939.00 | $ 13,938.99 | $ - | $ - | $ - | $ 47,877.99 |
| GA Bell | $ - | $ - | $ - | $ - | $ - | $ - |
| Atlantic Capital | $ 22,356.00 | $ 48,899.00 | $ 14,678.00 | $ - | $ - | $ 85,933.00 |
| World wide analytics | $ 87,388.00 | $ 32,321.00 | $ 22,918.00 | $ - | $ - | $ 142,627.00 |
| Arcaplia | $ 12,544.00 | $ - | $ - | $ - | $ - | $ 12,544.00 |
| NG Tech | $ 83,567.00 | $ - | $ - | $ - | $ - | $ 83,567.00 |
| Atlantis Media | $ 55,898.00 | $ 14,877.00 | $ - | $ - | $ - | $ 70,775.00 |
| On the Net | $ 3,922.00 | $ 29,399.00 | $ - | $ - | $ - | $ 33,321.00 |
| Sony | $ 105,888.00 | $ - | $ - | $ - | $ - | $ 105,888.00 |
| **TOTAL** | **$ 1,397,696.00** | **$ 877,397.99** | **$ 160,399.27** | **$ 8,787.00** | **$ 8,442.00** | **$ 2,452,722.26** |

Page 1

# EXHIBIT "J"

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 53

```
 1   filling out any of this.

 2       Q.   Did you ever have any securities held in

 3   a margin account?

 4       A.   No, I didn't.

 5       Q.   The real estate owned, Schedule C, which

 6   is the real estate at 3125 New University Trail,

 7   you didn't own that at the time of this financial

 8   statement?

 9       A.   I don't remember when this was done.

10       Q.   September of 2010.

11       A.   No.   It was rented.

12       Q.   The financial statement also provides

13   that you received a salary of $132,000.

14       A.   That's not accurate.   I only paid

15   myself enough to pay bills which was about

16   $40,000 to $50,000.

17       Q.   And you had bonuses and commissions of

18   80 to $90,000?

19       A.   Never had bonuses and commissions.

20       Q.   And that your total net worth was

21   $871,000?

22       A.   No.

23       Q.   Let me try this a different way.   Do

24   you know who prepared that document?

25       A.   I have no idea.
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

1    Q.    But you signed an attestation saying the

2    document is correct?

3    A.    I signed something on a paper, but I

4    don't know what document was that related to.

5    You know, when you're provided for a lot of

6    documents and sign for the loan, you just sign.

7    We do real estate before, and you go to a closing

8    and you don't read all the paperwork.   Most of

9    the papers would take three days to read all the

10   papers.

11   Q.    So you're saying somebody provided that,

12   and you don't know who, but you signed it?

13   A.    I signed it for the loan.

14   Q.    You signed it saying it's accurate but

15   you're now telling me it's not accurate?

16               MR. ALTMAN:  Go off the record a

17   second.

18                         (Off the record discussion.)

19                         (Exhibit L was

20                         marked for identification.)

21   BY MS. RICHMOND:

22   Q.    I'm going to show you what I've now

23   marked as Exhibit L.   This is another personal

24   financial statement provided to SunTrust with a

25   date of July 23rd, 2008.   Somebody wrote PFS

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 55

```
 1   attached.  Does that look like your handwriting?
 2       A.   No.   What's PFS?
 3       Q.   Personal financial statement.   There's
 4   a signature on the second to last page of that
 5   financial statement.   Is that your signature?
 6       A.   It's my writing, yes.
 7       Q.   And there's an attachment.   It talks
 8   about assets and liabilities of you, Stelian
 9   Pand.   Do you know who prepared that document?
10       A.   I don't know, but I haven't seen it
11   before.
12       Q.   Do you recall signing this document?
13       A.   I don't recall signing it.
14       Q.   And you have no recollection of who
15   prepared the financial information on this
16   document?
17       A.   No, I don't.
18       Q.   Did you ever have investment assets of
19   $189,768?
20       A.   No.
21       Q.   Where would SunTrust get that number, if
22   not from you?
23       A.   I don't know.
24            MR. ALTMAN:  Could we take a quick
25   break?
```

```
 1                MS. RICHMOND:   Sure.
 2                     (Brief recess.)
 3     BY MS. RICHMOND:
 4        Q.    Exhibit L, we were just talking about
 5     the personal financial statement dated July 23rd,
 6     2008.   We established it was your signature on
 7     the financial statement?
 8        A.    On the page on the back.
 9        Q.    On the back page.   There is a 2008
10     personal net worth statement prepared and
11     attached to that document.   It's my
12     understanding that you don't know who prepared
13     this document?
14        A.    I don't know.
15        Q.    Would it have been your accountant?
16        A.    Probably not.
17        Q.    Is there anybody else that prepared
18     financial statements on behalf of Global Capital?
19        A.    I don't recall that.
20        Q.    But you're telling me that the
21     information on that 2008 --
22        A.    On this page, was not prepared by me.
23        Q.    And it's not accurate?
24        A.    No.   Those aren't my personal assets.
25        Q.    Do you own cars worth $40,000?
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 57

1      A.    No, never did.

2      Q.    Residence, $450,000?

3      A.    The house is worth maybe $150,000.

4      Q.    A money market?

5      A.    No, never had a money market -- no,

6   there was something from SunTrust, an account

7   that I had.   It was a money market account at

8   SunTrust, but you can go on the record and see,

9   it was never $800,000.   It was under Global

10  Capital Group.

11     Q.    Did you have a mortgage on the house

12  when it was your name?

13     A.    Yes, I did.

14     Q.    With Countrywide?

15     A.    Yes, I did.

16     Q.    How much did you pay a month on that?

17     A.    I don't recall.

18     Q.    $998?

19     A.    It was something like that, yeah.

20     Q.    Was it about $176,000?

21     A.    Yeah.

22     Q.    So that piece is accurate on here, to

23  the extent you owned it at that time?

24     A.    Right, so that's accurate.

25     Q.    But nothing else is accurate?

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013                                    Page 58

```
 1      A.    No, I never had $450,000 personal
 2   residence assets, no.    The house was worth about
 3   $200,000.
 4      Q.    No money market?
 5      A.    No.
 6      Q.    No investment account?
 7      A.    No.
 8                      (Off the record discussion.)
 9               MS. RICHMOND:  I'm going to show you
10   what I'm marking as Exhibit M.
11                      (Exhibit M was
12                       marked for identification.)
13   BY MS. RICHMOND:
14      Q.    This is, again, a document entitled
15   Personal Financial Statement, and this is dated
16   May 15th, 2009.   Can you look at the second to
17   last page and tell me if that's your signature on
18   the second to last page?
19      A.    Yeah, it looks like it.
20      Q.    And again, it attaches a personal net
21   worth statement?
22      A.    Right.
23      Q.    It's the same personal net worth
24   statement attached to the prior financial
25   statement, July of 2008?
```

**IN RE: STELIAN G. PAND**
Stelian G. Pand on 12/20/2013

Page 59

```
 1      A.    Right.

 2      Q.    Do you recall giving this personal

 3   financial statement?

 4      A.    No, I didn't.

 5      Q.    Do you recall signing this personal

 6   financial statement?

 7      A.    No.

 8      Q.    Do you recall signing this personal

 9   financial statement?

10      A.    No, I didn't.

11      Q.    But that's your signature on the

12   personal financial statement?

13      A.    On one of the pages, yeah.

14      Q.    And again, going back to the reason why

15   SunTrust would want a personal financial

16   statement, that it would rely on that

17   statement --

18            MR. ALTMAN:   I'm going to object.

19   BY MS. RICHMOND:

20      Q.    What was your understanding why SunTrust

21   would want a personal financial statement?

22      A.    Somehow to pay the loan back, to engage

23   me into paying the loan back.

24      Q.    Or to know that the loan could be paid

25   back?
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013                                    Page 60

```
 1      A.   Could be paid back.

 2      Q.   Is that correct?  I don't want to put

 3   words in your mouth.   You tell me.

 4           MR. ALTMAN:  Objection, asked and

 5   answered.   He's stating that he did not provide

 6   that information.   That's his position.

 7   BY MS. RICHMOND:

 8      Q.   Again, going back to the September 28th,

 9   2010 financial statement which I believe was

10   Exhibit K, that statement, again, lists you had

11   cash of $316,000, that you again had securities

12   held in accounts of $159,000, which is consistent

13   with the other two financial statements?

14           MR. ALTMAN:  In other words, the

15   document states that.   He's not admitting that

16   he provided that.

17   BY MS. RICHMOND:

18      Q.   These documents are providing that you

19   had stock held in accounts, that you had a

20   personal residence valued at between $300,000 and

21   $400,000 and that you had automobiles and other

22   personal property between $40,000 and $75,000?

23      A.   That's not accurate.   The only thing

24   that's accurate is the mortgage, as far as I can

25   recall.
```

1       Q.    Back in 2008?

2       A.    Yes.

3       Q.    Otherwise, the information is not

4    accurate?

5       A.    No.

6             MS. RICHMOND: I'm going to show you

7    what I'm going to mark as Exhibit N.

8                    (Exhibit N was

9                     marked for identification.)

10   BY MS. RICHMOND:

11      Q.    This is, again, a personal financial

12   statement.   This one is dated November 7, 2011.

13   If you go back and recall, in December of 2011 is

14   when SunTrust increased the amount loaned to

15   Global Capital from $1 million to $2 million.

16      A.    Okay.

17      Q.    In connection with that increase, it's

18   my understanding that this personal financial

19   statement was provided to SunTrust Bank.   Can

20   you take a look at the second page and let me

21   know if that's your signature?

22      A.    It looks like my signature.

23      Q.    It looks like or it is?

24      A.    As far as I'm concerned, yeah, it's my

25   signature.

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

```
 1        Q.    Let's just look at what the personal
 2   financial statement provides.   Now the statement
 3   provides that you have cash on hand of $513,955.
 4   Is that accurate or was that accurate?
 5        A.    No, it's not accurate.
 6        Q.    At that time how much cash did you
 7   personally have on hand?
 8        A.    I haven't really had cash on hand.
 9   Everything that I had was in the company.
10        Q.    There was no cash in an account?
11        A.    No.
12        Q.    Again, it lists securities held by
13   broker in margin accounts, stocks?
14        A.    Didn't have those.
15        Q.    $131,500?
16        A.    No.
17        Q.    This time it lists again that you owned
18   the house at 3125 New University Trail?
19        A.    I never owned it back.
20        Q.    This is in 2011?
21        A.    Right, never owned it back.
22        Q.    It says you have cars worth $75,000?
23        A.    No, inaccurate.
24        Q.    Total assets, $1.4 million?
25        A.    Inaccurate.
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 63

```
 1      Q.    It also provides that your salary was
 2   $132,506?
 3      A.    Inaccurate.   It was only about 50.
 4      Q.    It provides you had bonuses in the
 5   amount of $1,390,917?
 6      A.    That's also inaccurate.
 7      Q.    At the time you signed the statement,
 8   did you believe this information to be
 9   inaccurate?
10      A.    I don't recall that information at all,
11   but I never had that.   I never had those assets
12   or anything that's listed on there.
13      Q.    Why did you sign the financial
14   statement?
15      A.    I don't remember what I signed at that
16   time.   I know I was provided some documents, but
17   I don't know.
18      Q.    Do you know who provided this
19   information to the bank?
20      A.    One of the loan officers probably from
21   the bank.
22      Q.    The loan officer provided this
23   information?  Who provided SunTrust with the
24   information regarding your assets and
25   liabilities?
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 64

```
 1        A.    The loan officer that worked at the bank

 2   at that time, SunTrust, he came out.   He gave me

 3   a bunch of documents to fill out -- to sign, and

 4   I just signed it and I gave it back to him.    I

 5   don't remember putting down all those numbers.

 6        Q.    If you look on this financial statement,

 7   it provides that you are certifying that

 8   everything on the first page of this financial

 9   statement is true and correct as of the date

10   furnished?

11        A.    Right.

12        Q.    And that SunTrust is relying on this

13   information to loan you the money?

14        A.    If I look back on the other financial

15   statements, most of them were empty when I signed

16   them.

17        Q.    And then the information was filled in?

18        A.    I don't know, maybe at a later time.    I

19   don't know.   I don't recall.

20        Q.    Do you usually read documents before you

21   sign them?

22        A.    Depends how long they are.

23        Q.    It's two pages.

24              MR. ALTMAN:   Well, ask him did he

25   ever see the document.
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 65

```
 1    BY MS. RICHMOND:

 2        Q.    You've testified you recall signing that

 3    document?

 4        A.    Yeah, if it's my signature, that means I

 5    signed it, right.

 6              MR. ALTMAN:  Did you review it?

 7              THE WITNESS:  I probably didn't, no.

 8    BY MS. RICHMOND:

 9        Q.    And you're telling me you don't know

10    where that information came from?

11        A.    No, I don't.

12              MR. ALTMAN:  Did you provide that

13    information?

14              THE WITNESS:  No, I did not.

15    BY MS. RICHMOND:

16        Q.    Can you tell me today who provided that

17    information to the bank?

18        A.    No one from our company side, from

19    Global Capital or -- it was just me and Global.

20    So I did not provide it.  So that means nobody

21    else provided it from the Global side.

22        Q.    Where else do you think SunTrust would

23    have gotten that information?

24        A.    I don't know.

25              MR. ALTMAN:  Do you have any guess?
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

```
 1                    THE WITNESS:  I don't know.  Maybe

 2    they made the loan look good.

 3    BY MS. RICHMOND:

 4         Q.    You're saying SunTrust might have made

 5    up that information?

 6         A.    It could have, yes.

 7         Q.    Just for accuracy, I'm going to mark,

 8    this is a general warranty deed.   I'm going to

 9    mark it as Exhibit P.   This is a general

10    warranty deed dated February 3rd, 2009.   This is

11    from you, Stelian Pand, and your wife, Diana

12    Pand, to your father-in-law, Alexander Petrut.

13    It's dated February 3rd, 2009 and pursuant to

14    this warranty deed, I'll summarize it and if I'm

15    wrong, please just correct me, you are granting,

16    you are transferring title to that 3125 New

17    University Trail home to your father-in-law.

18                         (Exhibit P was

19                          marked for identification.)

20                    THE WITNESS:  Okay.

21    BY MS. RICHMOND:

22         Q.    So as of February 3rd, 2009, you didn't

23    own that home?

24         A.    No, I didn't.

25         Q.    And that home is listed on your
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 67

```
1   financial statements through November of 2011 as
2   an asset of you.
3       A.   I did see it on one of the financial
4   statements, yes.
5       Q.   I can tell you it's on all the financial
6   statements.
7       A.   It was on the last one.
8       Q.   It was on the last one.   It was on the
9   2010 financial statement.   It was on the 2009
10  financial statement.   Why don't you take a
11  second to go back and look to make sure that I'm
12  accurate and you can tell me.
13           MR. ALTMAN:  Since he's saying he
14  didn't prepare it, I guess he has no reason to
15  believe it was not on there, but we will check.
16           THE WITNESS:  On this one, it says
17  personal mortgage, it says zero.
18           MS. RICHMOND:  This one states that
19  you have a value of personal residence as your
20  asset of $450,000.
21           THE WITNESS:  Right, but there's no
22  personal mortgage.
23           MS. RICHMOND:  You owned the house.
24           THE WITNESS:  I did not own the
25  house at this time.
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 68

```
 1    BY MS. RICHMOND:
 2        Q.    If you look back on the financial
 3    statement, the November 2011 financial statement,
 4    Schedule C provides that the home in reference is
 5    3125 New University Trail.  Just so we can be
 6    clear that, that's, in fact, the home on the
 7    financial statement, the home was transferred in
 8    February of 2009?
 9        A.    That's the home.
10        Q.    So at the time of the statement, you
11    didn't own that home, November 2011?
12        A.    No.
13        Q.    Because you hadn't owned it --
14        A.    No.
15        Q.    You hadn't owned it since February 2009?
16        A.    Right.
17                    (Brief recess.)
18                MS. RICHMOND:  I'm going to show you
19    what I'm going to mark as Exhibit Q.
20                    (Exhibit Q was
21                        marked for identification.)
22                MS. RICHMOND:  This is the 2010
23    income tax return for Global Capital.  I'll just
24    let you take a look at that, and then I'm going
25    to mark as Exhibit O the 2010 income tax return
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

```
 1    of you individually, Stelian Pand.
 2                      (Exhibit O was
 3                         marked for identification.)
 4    BY MS. RICHMOND:
 5        Q.    You testified that there were no other
 6    officers of Global Capital; is that correct?
 7        A.    No.
 8        Q.    This provides that this was ordinary
 9    income of $1,390,917 for Global Capital for 2010;
10    is that accurate?
11        A.    No.
12        Q.    It's not accurate?
13        A.    No.
14        Q.    Your tax return is not accurate?
15        A.    Those are not, yes.
16        Q.    You filed these with the IRS?
17        A.    No, they were not filed with the IRS.
18              MR. ALTMAN:   These were never filed?
19              THE WITNESS:   No.   I don't recall
20    those numbers.
21    BY MS. RICHMOND:
22        Q.    You don't recall the numbers, but I'm
23    telling you that's your 2010 tax return.
24        A.    Right, but those were not provided by
25    me.
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013                    Page 70

```
 1                MR. ALTMAN:   The numbers were not
 2    provided by you?
 3                THE WITNESS:   No, the numbers or the
 4    taxes, anything like that, yes.
 5    BY MS. RICHMOND:
 6       Q.   Do you have the copies that were filed
 7    with the IRS?
 8       A.   I don't have the copies that were filed,
 9    no.
10       Q.   You did produce these to us.   I mean
11    that's my understanding, that these documents
12    were produced to us --
13       A.   I did not send them to you.   Are you
14    talking about you or SunTrust?
15       Q.   Do you have 2010 tax returns from Global
16    Capital?
17       A.   I don't have them, no.   I could try to
18    talk to Franklin Accounting and see if he has a
19    copy.
20       Q.   I think we're going to need to do that
21    because as I understand it, this is the tax
22    return filed by Global Capital.
23       A.   Okay.
24       Q.   And you're telling me this is not the
25    tax return?
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 71

```
 1        A.    I don't recall those numbers, no.

 2                    MS. RICHMOND:  Go off the record.

 3                         (Off the record discussion.)

 4    BY MS. RICHMOND:

 5        Q.    Do you recall the income of Global

 6    Capital in 2010?

 7        A.    No, I don't.

 8        Q.    Do you have any idea of any

 9    distributions made to you?

10        A.    No, I don't recall any.  I was paid

11    only from Ample Media or Data Validation as a

12    regular employee.  I was paid by Data Validation

13    or Ample Media, depending on what year was it.

14    I never had a check from Global.

15        Q.    Do you know who would have provided

16    these tax returns to the bank?

17        A.    No.

18        Q.    Would it have been you?

19        A.    No, I did not provide those to the bank.

20    I provided some documents, but I don't recall

21    those.

22        Q.    How would the bank have gotten Global

23    Capital's tax returns if not from you, the sole

24    owner?

25        A.    I don't know.  I honestly don't know.
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 72

```
 1              MS. RICHMOND:  It's hard for me to
 2   understand.
 3              MR. ALTMAN:  Do you have any idea
 4   who could have provided them?
 5              THE WITNESS:  I don't have any idea,
 6   but I know I worked with the loan officers from
 7   SunTrust at that time and it was someone, someone
 8   introduced them to me.  I think at that time it
 9   was Hasan Mannan.  It was the loan officer from
10   SunTrust.
11   BY MS. RICHMOND:
12      Q.  Are you saying that he prepared this
13   document?
14      A.  I'm not saying that he prepared, but he
15   told me everything is fine with the loan and
16   we're ready to go.
17      Q.  Do you recall SunTrust or Mr. Hasan
18   asking you for the tax returns of Global Capital?
19      A.  I don't recall that.
20      Q.  Can you understand why SunTrust would
21   want the tax returns from Global Capital when
22   they were making a $2 million loan?
23      A.  I would, yes.
24      Q.  And why do you think they would want
25   that?
```

IN RE: STELIAN G. PAND
Stelian G. Pand on 12/20/2013

Page 73

1      A.    Again, for assurance.

2      Q.    For assurance that the loan would be

3   paid back?

4      A.    Right.    There were two loan officers,

5   Hasan Mannan and Greg Latora.   So I don't know

6   which one did the last one.    I don't recall.

7             MS. RICHMOND:   I'm going to show you

8   what I'm going to mark as Exhibit R.

9                   (Exhibit R was

10                      marked for identification.)

11  BY MS. RICHMOND:

12     Q.    This was a 2009 tax return for Global

13  Capital.    Does that look familiar to you?

14     A.    No, those numbers are not accurate.

15     Q.    That's not an accurate tax return

16  either?

17     A.    No, not those numbers, no.

18     Q.    So the financial statements aren't

19  accurate and the tax returns aren't accurate?

20     A.    Right.

21     Q.    When we spoke before regarding Global

22  Capital, you testified that there were never any

23  income statements created or any balance sheets;

24  is that correct?

25     A.    As far as I'm concerned or as far as I

```
 1    can recall, no.

 2                    MS. RICHMOND:  I'm going to show you

 3    what I'm going to mark as Exhibit S.

 4                        (Exhibit S was

 5                            marked for identification.)

 6    BY MS. RICHMOND:

 7       Q.   This is a document called Global Capital

 8    Group, Inc. Income Statement for the Nine Months

 9    Ending September 30th, 2011.   Do you know who

10    prepared that document?

11       A.   No.   It's not accurate, and I haven't

12    prepared it.

13       Q.   You're the sole owner of Global Capital?

14       A.   Right.

15       Q.   Who would have prepared that document if

16    not for you or at your request?

17       A.   I don't know.   I was dealing with the

18    loan officers from SunTrust, and I know I signed

19    a few documents with them.

20       Q.   This document is not a signed document.

21    This is a document that was provided to SunTrust

22    by Global Capital.

23                    MR. ALTMAN:  Well, are you asking if

24    it was?

25    BY MS. RICHMOND:
```